MICHAEL FRANCO *v.* CITY OF NEW HAVEN ET AL.

MALTBIE, C.J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued March 19—decided April 16, 1947

*Herman R. Alderman,* with whom was *Robert N. Giaimo,* for the plaintiff.

*George G. DiCenzo,* for the defendant.

*Harold J. Eisenberg* filed a brief as amicus curiae.

MALTBIE, C. J. This is an action for a declaratory judgment seeking a determination whether certain bonds which the board of aldermen of the defendant city has voted to issue are valid under our constitution. The bonds were to serve the purpose of defraying "the capital costs . . . involved in the temporary housing program for veterans." The board of aldermen found authority for the action in Public Act No. 3 passed at the special session of the General Assembly held in May, 1946. The provisions of that act so far as material to the inquiry before us are

printed in the footnote.[1]   The terms of the vote and
the absence of the declaration required by § 2 before

[1] Sec. 1.   As used in this act, the word "veteran" shall mean any
person who served or is serving in the United States army, navy,
marine corps, coast guard or merchant marine during the second
world war, who resided in this state at the time of his induction
or enlistment or has continuously resided in this state for at least
six months next prior to the passage of this act, and who, unless
still in service, was discharged under conditions other than dis-
honorable, and shall also include the spouse or widow or widower
of any such person, the spouse of any person so serving and the
widow or widower of any person who died while so serving.  .  .  .

Sec. 2.   Section 180e of the 1939 supplement to the general
statutes is amended to read as follows:   In each municipality of the
state there is created a public body corporate and politic to be
known as the "housing authority" of the municipality; provided
such authority shall not transact any business or exercise its powers
hereunder until the governing body of the municipality by proper
resolution shall declare that there is need for a housing authority
in the municipality, provided it shall find (1) that insanitary or
unsafe inhabited dwelling accommodations exist in the municipal-
ity or (2) that there is a shortage of safe or sanitary dwelling ac-
commodations in the municipality available to families of low income
at rentals they can afford, or (3) that there is a need for temporary
housing for veterans in the municipality.   In determining whether
dwelling accommodations are unsafe or insanitary said governing
body may take into consideration the degree of overcrowding, the
percentage of land coverage, the light, air, space and access available
to the inhabitants of such dwelling accommodations, the size and
arrangement of the rooms, the sanitary facilities and the extent to
which conditions exist in such buildings which endanger life or
property by fire or other causes.

Sec. 3.   Any municipality, through its housing authority or, if
it has no housing authority and is not qualified to establish one as
provided by section two of this act, through any other agency
designated by its governing body, for the purpose of providing
shelter for any of its inhabitants who are veterans (a) may ac-
quire by purchase, gift, lease or condemnation any building or por-
tion thereof or any interest therein for use as a dwelling unit or
units, and may alter, reconstruct, repair or remodel such building or
portion thereof to provide the greatest possible number of suitable
dwelling units and may rent such units to veterans at rates to be
determined as provided in section six of this act, and (b) may so
acquire any tract of land or interest therein and (1) permit any

a "housing authority" can function indicate that the board was acting under the provisions of § 3 of the act, which is the only section making specific provision for establishing a housing program for veterans. Whether the board was authorized to issue the bonds in question under that provision is a question not presented upon this record. The plaintiff states at the beginning of his brief, as the sole issue to be determined, the question whether the issuance of the bonds specifically to provide housing for veterans constitutes a violation of the provision of § 1 of article first of the constitution that "no man, or set

veteran to place or construct thereon any dwelling unit of a temporary nature or (2) provide such temporary dwelling units by causing them to be constructed or by acquiring them by purchase, lease or gift and causing them to be transported to such tract and prepared for occupancy. . . .

. . . . . . . . . . . .

Sec. 10. The state, through the state housing authority, shall pay fifty per cent of the expense incurred since December 31, 1945, and to be incurred by any municipality in establishing any temporary housing project in conformity with this act, exclusive of any grants or gifts by the federal government or any person. No municipality shall receive such state aid except with the approval of the governor, the comptroller and the state housing authority and in accordance with their determination of the need therefor. In making such determination they shall consider (a) the number of veterans in such municipality in relation to the amount of existing housing; (b) the availability of land, labor and materials; (c) the effect of such proposed municipal housing upon private building operations, and (d) the number of applications for aid received and the relative need of the applicants.

. . . . . . . . . . . . .

Sec. 15. With the exception of sections two and fourteen hereof, this act shall cease to be effective five years after its passage, unless sooner terminated by the general assembly. Within six months thereafter all buildings erected or moved in accordance with the provisions hereof pertaining to temporary housing shall be demolished or removed by the housing authority or other agency under whose direction they were so erected or moved.

. . . . . . . . . . . . . .

of men are entitled to exclusive public emoluments or privileges from the community."

We very recently pointed out in the case of *Lyman* v. *Adorno,* 133 Conn. 511, 515, 52 A.2d 702, that this provision of the constitution has a meaning equivalent to that part of the fourteenth amendment to the constitution of the United States which states that no state shall "deny to any person within its jurisdiction the equal protection of the laws"; that neither provision prevents legislation applicable only to a particular class of persons, provided there is some material and substantial difference germane to the subject and purpose of the legislation between those within and those without the class; that primarily the question whether there shall be legislation of this character is for the determination of the General Assembly; and that courts cannot interfere unless its action is clearly unreasonable. We held that an act providing for the payment of bonuses to veterans of the late war was not a violation of § 1 of article first of the constitution.

The situation before us differs in certain material respects from that we were considering in the *Lyman* case. The General Assembly did not in the act now under consideration state its purpose but the provisions of the act indicate that it was designed to relieve the untoward conditions resulting from an acute housing shortage as it particularly affected veterans of the late war. That a lack of safe and sanitary dwelling accommodations available at a reasonable rent to low income groups has a harmful effect upon the health, morals and general welfare of the community is in effect admitted in the pleadings and cannot be seriously questioned; and the General Assembly may well have concluded that private initia-

tive would not or could not successfully afford remedial measures. *Allydonn Realty Corporation* v. *Holyoke Housing Authority,* 304 Mass. 288, 294, 23 N.E. 2d 665. The question then is: Can the General Assembly properly regard the situation of veterans coming within the definition in the act as substantially different from that of other members of the community as regards the unfortunate results of an acute housing shortage?

It is a matter of common knowledge that the absence of men and women in the armed forces of the country often resulted in the break-up of homes, and that when they returned they were confronted more acutely than were those who had remained here with difficulty in finding dwelling accommodations where the family might again resume its unity, particularly safe and sanitary living quarters within the range of the low rentals which were all many of them could pay. The General Assembly might reasonably have thought that such a condition would be likely to cause a continued disunity of the family or a manner of living which would prevent a normal family life; that to add to an already existing housing shortage those who, returning, were seeking to re-establish their homes would produce overcrowding and the acceptance of unsafe or unsanitary living conditions; and that the result might well be to break up families or to subject children to conditions adverse to a sound development and tending to increase delinquency. On these and other grounds the General Assembly might have concluded that as regards the need of proper and adequate housing the situation of the veterans substantially differed from that of those members of the community who had remained in the state during the war years, and that it was reasonably jus-

tified in making provision for them not afforded to other residents. We cannot hold that such a conclusion is not one which the General Assembly could reasonably reach. It is, no doubt, true that some veterans would have no more need for assistance of this kind than other members of the community, but, again as we pointed out in the *Lyman* case, such action by the General Assembly is not to be judged by its effect upon individual cases; the test is, could the General Assembly reasonably regard the application of the act to veterans defined in it as best adapted, as a general rule, to accomplish the purpose it had in mind?

The plaintiff relies rather heavily upon *Beach* v. *Bradstreet,* 85 Conn. 344, 82 A. 1030. We discussed that case at some length in the *Lyman* case and pointed out that, in holding invalid, as a use of public moneys for private purposes, an act of the General Assembly providing for annual payments to certain veterans of the Civil War, the basis of the decision was that it required payments to be made to veterans whether or not they resided in Connecticut at the time they went into the service, or even if they were then aliens, and consequently veterans were included who formed no part of the quota of this state in that war. The act before us includes veterans who resided in this state at the time of their induction or enlistment, and, as we pointed out in the *Lyman* case, furnishing aid to such persons would not be within the limitation established in the *Beach* case. But the act also includes veterans who have "continuously resided in this state for at least six months next prior to the passage of this act," and such men may not have been a part of the quota of this state in the war. There is not the same reason for denying to them the

benefit of the act now before us that there was to hold, as we did in the *Beach* case, that payments of money might not be made to men who were residents of other states or aliens when they entered service. The evils of an acute housing shortage impinge very directly upon the welfare of the community, and that is due to the residence of veterans within it whether or not they entered service as a part of the quota of this state. The difference in the two situations is well illustrated if we apply the theory suggested by the Supreme Judicial Court of Massachusetts in *Allydonn Realty Corporation* v. *Holyoke Housing Authority,* supra, 292, that of balancing public benefit against private gain; in such a balancing the General Assembly may have felt that the public benefit from relieving a housing shortage has much more weight because of the fact of the residence of veterans in the community than that element would bring into the problem where the question was the payment of sums of money to veterans. We cannot hold that the legislature could not reasonably include veterans within the act before us upon the basis of six months' continuous residence in this state before its passage, even though they were not residents here when they entered the service.

We have found no decisions in other jurisdictions which militate against the validity of the provisions of the act before us as proper class legislation, but there are a number which support it directly or in principle. A similar statute was sustained by the Ohio Court of Common Pleas and its decision was affirmed and its opinion approved by the Court of Appeals. *Columbus* v. *Columbus Metropolitan Housing Authority,* 33 Ohio O. 212, 67 N.E.2d 338, 350; 68 N.E.2d 108. Examples of analogous laws

552

which have been sustained where it was claimed that they involved improper class legislation will be found in the following cases: *Veterans' Welfare Board* v. *Riley,* 189 Cal. 159, 169, 208 P. 678; *Hinton* v. *State Treasurer,* 193 N.C. 496, 505, 137 S.E. 669; *State ex rel. Reclamation Board* v. *Clausen,* 110 Wash. 525, 542, 188 P. 538; *Strauss* v. *Bradley Beach,* 117 N.J.L. 45, 186 A. 681, aff'd 118 N.J.L. 561, 194 A. 160. While the question of improper class legislation seems not to have been presented, the Justices of the Supreme Judicial Court of Massachusetts advised the General Court that a statute similar to the one before us was constitutional; *Opinion of the Justices,* 320 Mass. 773, 67 N.E.2d 588; see also *State ex rel. Atwood* v. *Johnson,* 170 Wis. 251, 176 N.W. 224.

To the question propounded in the reservation asking whether the proposed sale of the bonds would be in violation of the constitution of this state, we answer "No." We do not answer the question whether the bonds would be valid obligations of the defendant city, because it goes beyond the scope of the case as presented to us.

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.