STATE EX REL. THOMAS HIGGINS ET AL. *v.* CIVIL SERVICE COMMISSION OF THE CITY OF BRIDGEPORT ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued May 13—decided July 8, 1952

*John F. Clancy* and *James F. Kenney,* with whom were *Robert J. Testo* and *Michael J. Sicilian,* for the plaintiffs.

*John V. Donnelly,* for the named defendant and defendant personnel director.

*Maurice J. Magilnick,* for the other defendants.

O'SULLIVAN, J. The first issue presented by this reservation concerns the constitutionality of a special act of the General Assembly authorizing credits for veterans taking promotional examinations in the classified service of the city of Bridgeport. Should the act be declared constitutional, a further issue is whether the credits were properly applied by the municipal civil service commission.

For the purpose of discussing the constitutional question, the following statement of facts stipulated by the parties will suffice: In 1935 the General Assembly provided a civil service system for the city of Bridgeport. 22 Spec. Laws 261, No. 407. Since then, all positions in the police department, now totaling 337, have been in the classified service under the administration of the defendant commission. In 1943 the General Assembly passed a special act requiring the commission to add five points to the earned rating received by an honorably discharged war veteran taking an examination for original employment with the city, and ten points if he had a service-connected disability. 24 Spec. Laws 212, No. 300. In 1945 the General Assembly adopted an amendment calling for the addition of similar points on promotional examinations as well. 24 Spec. Laws 789, No. 406.

The plaintiffs and five of the defendants are either patrolmen or detectives in the Bridgeport police department. While none of these defendants is an honorably discharged war veteran, all of the plaintiffs qualify as such under the provisions of the act of 1943 as amended in 1945. The other defendants

are the civil service commission and Linley, its personnel director. Unless otherwise indicated, the word defendants, as used in this opinion, refers only to the nonveteran officers.

On March 1, 1951, the commission held a promotional examination in which the plaintiffs and the defendants participated. A list of names was then compiled, showing the relative standing of the several candidates as determined by their examinative ratings. Any vacancy hereafter occurring in the position of police sergeant is to be filled by the appointment of him whose name, at the time, tops the list. Because of the addition of the points required by the amendment of 1945, the standing of each plaintiff was materially improved. By this means he obtained, to the detriment of the defendants, a position on the list higher than he would otherwise have merited. The defendants maintain that this amendment, compelling, as it does, preferential treatment of veterans on promotional examinations, is improper class legislation and hence unconstitutional.

The defendants rely in part upon the provision of § 1 of article first of the constitution of Connecticut which states that "no man, or set of men are entitled to exclusive public emoluments or privileges from the community." They also assert that the amendment of 1945 violates that provision in the fourteenth amendment to the constitution of the United States which prohibits every state from denying to any person the equal protection of the laws. The latter claim adds nothing to the former. The guarantee incorporated in the federal constitution has a meaning equivalent to that found in our own. *State ex rel. Brush* v. *Sixth Taxing District,* 104 Conn. 192, 195, 132 A. 561. We confine ourselves, therefore, to the

claim that the Connecticut constitution renders the amendment of 1945 invalid.

Legislation authorizing preferential treatment of honorably discharged war veterans seeking either original employment or promotional advancement in the civil service has not previously been examined by this court. Determination of the validity of such legislation presents a problem with a double aspect. The first requires disposition of the question whether the legislation serves a public purpose, that is to say, whether it promotes, inter alia, the general welfare of the community. *Beach* v. *Bradstreet*, 85 Conn. 344, 350, 82 A. 1030; *Platte Valley Public Power & Irrigation District* v. *County of Lincoln*, 144 Neb. 584, 589, 14 N.W.2d 202; *City Affairs Committee* v. *Jersey City*, 134 N.J.L. 180, 182, 46 A.2d 425; 37 Am. Jur. 734, § 120. No enactment creating a preference can withstand constitutional attack if the sole objective of the General Assembly is to grant personal gain or advantage to an individual. Its validity is contingent, at least in part, upon its furthering a public purpose; if enacted with that end in view, legislation can be sustained even though it may incidentally confer a direct benefit upon an individual or a class. *Horrigan* v. *Mayor of Pittsfield*, 298 Mass. 492, 497, 11 N.E.2d 585; 3 Willoughby, Constitution of the United States (2d Ed.) § 1150.

We have recently upheld the validity of two acts authorizing special treatment of veterans in fields other than that of public employment. The first dealt with the distribution of $50,000,000 as a so-called bonus; the other, with limited tax exemptions. *Lyman* v. *Adorno*, 133 Conn. 511, 52 A.2d 702; *Walsh* v. *Jenks*, 135 Conn. 210, 62 A.2d 773. The public purpose, we noted, in the preamble of the act in the

*Lyman* case, supra, 518, was that the proposed distribution of bonus payments to veterans was to encourage patriotism, and we observed that, whatever our own convictions in this regard might be, we could not, as a matter of law, hold the purpose to be beyond the realm of reason. We repeated and gave approval to this observation when discussing the act providing tax exemptions for veterans. *Walsh* v. *Jenks,* supra, 221. We are, therefore, committed to the proposition that a proper public purpose may be found in the fostering of patriotism.

The amendment of 1945, unlike the so-called bonus act, did not set forth in preamble a statement of the legislative purpose. That omission, however, is of no moment. If there is any reasonable ground upon which the validity of the act can be sustained, we must presume that the legislature intended to further that ground rather than that it acted upon some improper motive. *Walsh* v. *Jenks,* supra, 222. In adopting the amendment, the General Assembly could reasonably have believed that the extension of preferential treatment to veterans taking civil service examinations, either for original employment or for promotion, would encourage patriotism. Since we are bound to consider that this was one of the ends intended to be served, the purpose was genuinely public in nature.

The second aspect of the problem presents the question whether the amendment is improper class legislation. The provision of § 1 of article first of the Connecticut constitution that "no man, or set of men are entitled to exclusive public emoluments or privileges from the community" does not necessarily prevent the General Assembly from dealing differently with different classes of persons. It may constitutionally do so (1) if there is a natural and

substantial difference between those preferred by the legislation and all others, and (2) if that difference is logically related to the subject and object of the legislation. *Ruppert* v. *Liquor Control Commission,* 138 Conn. 669, 675, 88 A.2d 388; *Francis* v. *Fitzpatrick,* 129 Conn. 619, 623, 30 A.2d 552; *State* v. *Cullum,* 110 Conn. 291, 295, 147 A. 804. No serious question can be raised as to the existence of (1). Those who have served in the armed forces obviously occupy in the community a different status than do other citizens. *Lyman* v. *Adorno,* supra, 521. The debatable point is concerned with (2).

In the *Lyman* case, supra, 521, the essence of the enactment in question was to effectuate grants to veterans. A similar situation prevailed in *Walsh* v. *Jenks.* In the case at bar, however, we are faced with a different kind of legislation. While it incidentally provides preferences for veterans, its essence is to prescribe rules for the selection of municipal employees. This legislation is more nearly akin to that involved in *Franco* v. *New Haven,* 133 Conn. 544, 52 A.2d 866, wherein we upheld the validity of an issue of bonds to finance a veterans' housing project. We said at page 548: "The situation before us differs in certain material respects from that we were considering in the *Lyman* case . . . . [T]he provisions of the act indicate that it was designed to relieve the untoward conditions resulting from an acute housing shortage as it particularly affected veterans of the late war." After pointing out the evil social effects of a housing shortage, we went on to say (p. 549): "The question then is: Can the General Assembly properly regard the situation of veterans coming within the definition in the act as substantially different from that of other members of the community as regards the unfortunate

results of an acute housing shortage?" The opinion concludes that veterans were in a distinguishable class under this test because their absence, while in service, had caused many of them to lose dwelling accommodations which they otherwise would have kept.

The test in the *Franco* case may thus be phrased to meet the problem in the case at bar: Can the General Assembly properly regard the situation of honorably discharged war veterans as substantially different from that of other members of the community as regards the selection of employees of the city of Bridgeport? This can reasonably be answered in the affirmative. It is a most desirable thing for the welfare of a city to obtain for its classified service the highest types of available candidates. The General Assembly could with reason have believed that honorably discharged war veterans would bring to the service of the city of Bridgeport qualities of patriotism, loyalty and increased sense of responsibility—traits, developed by military discipline and service, which tend to make of the veterans superior public servants. "No one should deny that these advantages are conducive to the better performance of public duties, where discipline, loyalty, and public spirit are essential." *Commonwealth ex rel. Graham* v. *Schmid,* 333 Pa. 568, 573, 3 A.2d 701. We point out, however, that an enactment of this nature which gives arbitrary preference to veterans, regardless of their capabilities, is void. It is essential to the validity of such an act that it require the veteran to possess the minimal qualifications necessary to the proper discharge of the duties of the position he seeks. *People ex rel. Sellers* v. *Brady,* 262 Ill. 578, 593, 105 N.E. 1; *State ex rel. Taggart* v. *Addison,* 76 Kan. 699, 707, 92 P. 581; *Mayor of Lynn* v. *Com-*

*missioner of Civil Service,* 269 Mass. 410, 414, 169 N.E. 502; *Swantush* v. *Detroit,* 257 Mich. 389, 392, 241 N.W. 265; *State ex rel. Kangas* v. *McDonald,* 188 Minn. 157, 160, 246 N.W. 900; *State ex rel. Raines* v. *Seattle,* 134 Wash. 360, 377, 235 P. 968; 10 Am. Jur. 927, § 9. The act before us complied with this requirement.

The defendants do not quarrel with these decisions. In argument and brief they concede the constitutionality of a veterans' preference act when its scope is limited to original employment. They attempt, however, to differentiate between that situation and one where, as here, the preference is authorized in promotional examinations. They place their reliance, in the main, on *Commonwealth ex rel. Maurer* v. *O'Neill,* 368 Pa. 369, 83 A.2d 382, and the dictum in *Parrack* v. *Ford,* 68 Ariz. 205, 209, 203 P.2d 872. Their claim amounts to this: A preference accorded veterans seeking original employment in the civil service can be constitutionally upheld as proper class legislation only on a quid pro quo theory; in such instances the preference is legally warranted because the veteran is apt to bring to the public service more desirable attributes than those ordinarily found in the nonveteran; this contribution is exhausted as the basis of a valid preference once it has been used to obtain employment for the veteran; credits on promotional examinations, therefore, place a value on something which does not then exist and there is no longer a quo which he can give for the quid which he is permitted to receive; and consequently, the amendment of 1945 contravenes the constitutional guarantee that "no man, or set of men are entitled to exclusive public emoluments or privileges from the community."

This line of reasoning, however, is not persuasive.

Qualities developed in a veteran through his training and service do not evaporate and disappear upon his entering public employment. Were this not so, it would indeed be difficult to justify preferential treatment for him in obtaining a position in the first instance. If the qualities have once been acquired, it is reasonably probable that they will continue to characterize the veteran and thus afford the same potential value in promotions as they do in appointments. At least, the legislature could reasonably have taken this position, and since it could, we are powerless to interfere with its decision. *Murphy, Inc.* v. *Westport,* 131 Conn. 292, 304, 40 A.2d 177.

The defendants further maintain that the effect of the amendment of 1945 runs counter to the objective of civil service, which abhors preferences, and that it will eliminate incentive in nonveteran officers to the detriment of the morale in the department. It is not for the judiciary to assess the wisdom of this or of any other act. *Trustees of Bishop's Fund* v. *Rider,* 13 Conn. 87, 103. Whether public policy required preferential treatment of war veterans in promotional examinations in the Bridgeport police department was a question for the General Assembly, and for it alone, to answer. *Landry* v. *Personnel Appeal Board,* 138 Conn. 445, 451, 86 A.2d 70. Our duty is limited to determining whether the formulated policy, as expressed in the amendment of 1945, contravenes any constitutional provision. *State* v. *Gilletto,* 98 Conn. 702, 714, 120 A. 567. In reaching our decision on that matter, we must make every proper presumption and intendment in favor of the legislation and it must be sustained unless its invalidity appears beyond reasonable doubt. *State* v. *Bassett,* 100 Conn. 430, 433, 123 A. 842; *Beach* v. *Bradstreet,* 85 Conn. 344, 349, 82 A. 1030. Since we

can find no vital distinction between the power of the legislature to provide for preferences on original employment and its power to do so on promotional examination, the argument that the amendment is unconstitutional fails. We conclude that the amendment of 1945 does not violate § 1 of article first of the state constitution.

The second issue presented by the reservation is whether the points were properly applied. These further facts have been stipulated by the parties: The promotional examination held on March 1, 1951, covered four subjects. These had been selected by the commission. The first dealt with the duties of a police sergeant. This was the only one for which the commission required a written test. The other subjects were (a) the candidate's training, experience and general qualifications, (b) his performance during the preceding year, and (c) his length of service in the department. Ratings on all four subjects were made by the defendant personnel director, Linley, the first being based on the written test and the other three mainly on departmental records containing data upon past activities of the candidates. The points to which the plaintiffs were entitled under the amendment of 1945 were added only to the rating received on their written tests. To each subject the commission had assigned a relative weight. Thus, the written test was given a weight of four while the examinations on the other subjects received weights of three, two and one, respectively. The ratings on the unwritten examinations were then multiplied by their assigned weights. The rating on the written test, after being augmented by the preference points, was multiplied by four. The sums were added together and the total was divided by ten. The final ratings of the plaintiffs were then established. It is

their claim that the application of the points only to the written part of the examination was contrary to the amendment of 1945 and that the points should have been added to all of the ratings. If this had been done, the ratings of each plaintiff with a service-connected disability would have been increased by six percentage points over those actually received, while the ratings of all other plaintiffs would have been three points higher.

The act of 1943 as amended in 1945 is quoted in a footnote.[1] All of the parties take the position that the solution of the problem under discussion lies in the meaning intended by the legislature when using the words "earned rating" as they appear in the first

[1]The amendment of 1945 (24 Spec. Laws 789, No. 406) affected § 1 of the special act of 1943 (24 Spec. Laws 212, No. 300). The only change made by the amendment was to add the last sentence appearing in § 1 below. The material part of the act of 1943, as amended, reads as follows:

"SECTION 1. Any person, who is a resident of the city of Bridgeport and has served in the armed forces of the United States in time of war and has received therefrom an honorable discharge, and who is not eligible for disability compensation or pension through the Veteran's Administration, shall have five points added to his earned rating on any examination held for the purpose of establishing an original employment list for said city. Any such person shall be entitled to such additional five points on any promotional examination, provided he shall receive at least a minimum passing grade on such examination.

"SEC. 2. Any such person with a service-connected disability which is substantiated by record or other sufficient documentary evidence, on any such examination shall have ten points added to his earned rating. . . .

"SEC. 3. Any such person, having a service-connected disability, shall be exempt from . . . any physical examination . . . provided such disability shall not make it physically impossible for him or her to perform the required duties and functions of the employment for which he or she seeks classification on any employment list. . . .

"SEC. 4. The names of veterans described herein shall be placed upon the lists of eligibles for appointment . . . in the order of such augmented ratings."

and second sections of the act. We consider the case as thus made by the parties.

It is the defendants' claim that the points were properly added only to the rating on the written test because, they say, an earned rating means "the rating actually earned by candidates' effort in demonstrating skill and capacity as evoked by definite tests addressed to those ends," and because, they urge, the written test was the only part of the entire examination which sought those ends. The words of a legislative enactment, however, are to be interpreted in their natural and usual meaning unless the context indicates that a different meaning was intended. *Brown* v. *New Haven Taxicab Co.,* 92 Conn. 252, 254, 102 A. 573. Although the defendants labor in an attempt to demonstrate that the context of the act indicates otherwise, we are satisfied that the legislature employed the words "earned rating" in the sense in which they are ordinarily used. A rating means a grade and "earned" means merited or deserved as by labor or service. Webster's New International Dictionary (2d Ed.); see *Hartford Electric Light Co.* v. *McLaughlin,* 131 Conn. 1, 5, 37 A.2d 361.

It may very well be that a subject of examination could be selected by the commission which would result in a rating not earned by the candidates. That, however, is not true of the four subjects upon which the plaintiffs were examined. The ratings on their service records, on their training, experience and qualifications, and even on their seniority, were, by their activities in the department or by the length of time they had served, as clearly earned as were those based upon the knowledge which their written test showed them to possess.

Were we to adopt the meaning suggested by the

defendants and approve the action of Linley in adding the points only to the rating on the written test, we would, in effect, be giving to the commission the power to circumvent the legislature's desire to grant preference to war veterans. If we assume that points can be added only to written tests or even to oral tests covering the same subject matter, the points to which war veterans are entitled could be reduced in proportion to the number of additional subjects of examination which the commission requires the candidates to pass. "Preference to veterans must be a reality. It cannot be made illusory or a mere gesture." *Opinion of the Justices,* 324 Mass. 736, 744, 85 N.E.2d 238. The earned rating to which the points must be added can logically mean none other than the final grade on the entire examination.

We answer the questions reserved[1] as follows:

[1] "(27) In adding five or ten points to the earned rating of veterans, as required by Special Act Number 300 of the Special Acts of 1943, as amended, is the "earned rating," to which said points are to be added, the rating attained by candidates on the competitive written examination only as interpreted and applied by the Personnel Director and the Civil Service Commission in the preparation of the promotional employment list for Police Sergeants hereinbefore described?

"(28) In adding five or ten points to the earned rating of veterans as required by Special Act Number 300 of the Special Acts of 1943 as amended, is the 'earned rating,' to which said points are to be added, the final or total rating attained by candidates on all subjects of examination as contended by the relators?

"(29) In applying veterans' preference credits to the earned rating of the relator-veterans in the examination for promotion to the class of position of Police Sergeant in the Bridgeport Police Department, as provided for in Special Act No. 300 of the Special Acts of 1943, as amended, did the Civil Service Commission and the Personnel Director act legally in applying said credits only to the grade obtained by the relator-veterans in the written examination or test and not to the other subjects of examination?

"(30) Is that portion of the Special Act No. 406 of the Special Acts of 1945 amending Special Act No. 300 of the Special Acts of 1943 by adding provision for veterans' preference credits of

"Yes" to the question appearing as paragraph 28 of the stipulation for reservation; "No" to the other three questions.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.

five points to veterans and ten points to disabled veterans in a promotional examination in the classified service of the Bridgeport Police Department, as contrasted with the provision contained in said Special Act No. 300 for veterans' preference credits in the establishment of an original employment list only, unconstitutional in that the application of said amendment to the classified service of the City of Bridgeport and to the establishment of promotional employment lists is unreasonable, constitutes class legislation, and violates the guarantees of the equal protection of laws as contained in the XIV Amendment of the Constitution of the United States and Article I, Section 1 of the Constitution of the State of Connecticut?"