SERGEANT ISABELO ROMÁN, ETC., Plaintiff and Appellee, v. SALVADOR T. ROIG, SUPERINTENDENT OF POLICE, Defendant and Appellant.

No. R-65-15.      Decided June 29, 1966.

*J. B. Fernández Badillo, Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for appellant. *Elfren Bernier* for appellee.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

By circular letter No. 9 of July 26, 1963, the Superintendent of Police established a list of eligibles for promotion to the rank of Second Lieutenant, according to the results of examinations held to that effect. The list of eligibles consisted of 111 candidates for promotion. Sergeant Isabelo Román Díaz, plaintiff herein, held position No. 102 on the list of 111 candidates, in strict order of rating obtained in the examinations. Pursuant to § 2 of Act No. 469 of May 15, 1947 (Sess. Laws, p. 1048), the Police Administration credited five points over the rating obtained in the examinations to all the candidates for promotion who were veterans, Puerto Rican Veteran's Bill of Rights.

The Puerto Rican Veteran's Bill of Rights, Act No. 469 of May 15, 1947, provides in § 2 as follows: "For the purposes of qualifying for any position or office in the Commonwealth service, the proper authority shall credit any veteran who may be a candidate for the said position or office, in the examinations held for the purpose and in which the said veteran may participate, with five (5) per cent of the general rating thereof."

Under the pretext of determining the legislative intent, the expression of which in this case is par excellence the clear and unambiguous language of § 2 copied above,— § 14 of the Civil Code; *Rodríguez Rodríguez* v. *Governor,* 91 P.R.R. 95 (1964); *López* v. *Muñoz, Governor,* 81 P.R.R. 328 (1959), and authorities cited therein—the trial court determined that § 2 grants the benefit of five (5) per cent only the first time the tests are taken for entrance in the Service. We cannot agree with the trial court's criterion which, more than an interpretation of the law, is a different judicial wording thereof, interpolating limitations and qualifications restricting the scope which the lawmaker did not see fit to impose.[1]

---

[1] ". . . They also forget that when the lawmaker has expressed himself in clear and unambiguous language the text of the Act is the perfect expression of the legislative intent. Civil Code (1930 ed.), § 14, 31 L.P.R.A. § 14; 2 Sutherland, Statutory Construction, § 4701 *et seq.* (3d ed.); Endlich, Interpretation Statute, ch. I, § 1 *et seq.*; Sutherland, Statutes and Statutory Construction, ch. XIII, § 234 *et seq.*; Black, Construction and Interpretation of the Laws, ch. 3 at 51. In *Atiles, Mgr. State Ins. Fund* v. *Industrial Comm'n*, 77 P.R.R. 15, 19, we stated that it is the duty of the court to adhere to the letter of the law, although a literal interpretation should not be adopted when it is contrary to the general authentic intent and the true purpose of the Legislature and would obviously lead to absurd and unreasonable results; and even so, we said that if such were the legislative intent and the text of the law leaves no room for assuming a different purpose on the part of the lawmaker which might be more rational and fair, the courts must not impose their own criterion of justice and reasonability, and must respect the legislative will. And in *Clínica Juliá* v. *Sec. of the Treasury*, 76 P.R.R. 476, 486:

'But those are cases which deal with internal contradictions in the statute itself, where it is the duty of the courts to resolve those contradictions with a view to determining the legislature's genuine intent. That purpose belongs not to the judge but to the legislature, as it may arise from the statute itself. The judge is an interpreter and not a creator. His power of construction acquires relevance when several probable meanings arise from the statute which furnish an adequate margin for judicial selection, but if the language is so unequivocal as to suggest only one meaning, a full sense of judicial humility and self-discipline requires the application of the legislative will. Frankfurter, "Some Reflections on the Reading of Statutes," 47 Colum. L. Rev. 527; 1 Mertens 59. That is a rule of judicial honor.'

The Declaration of Policy of the Veteran's Bill of Rights provides that "There are herein fixed certain facilities, rights, benefits, and preferences in favor of the veterans of Puerto Rico, all of them absolutely necessary to accelerate the process of their incorporation to civilian life, improve their academic training and their technico-vocational skill, and provide the means to ensure their economic and social welfare." No one is better fitted than the lawmaker himself to determine what rights, what benefits, and what preferences should be accorded to veterans, and how broad and to what extent should they be granted, in order to accomplish adequately the ends and purposes sought by this legislation. Thus, with a view to accomplishing those purposes, the lawmaker provided in § 2, among other rights, benefits, and preferences, that for the purpose of *qualifying* for *any position or office*

---

"See: *De la Haba* v. *Tax Court; Treas., Int.,* 76 P.R.R. 865, 887. Where the language of a [tax] statute is clear, it must be applied as the Legislature wrote it, not as this Court or the Secretary [of the Treasury] might wish to read it; *Community of the Heirs of Fajardo* v. *Tax Court,* 73 P.R.R. 499, 505. In this case we said upon reversing the Superior Court which denied the right to deduct certain interests for the purposes of income tax, that the courts have no authority to write into the unambiguous language of a statute what the Legislature, whether deliberately or not, chose to omit, even recognizing that the application of the Act as it was made by the lower court obeyed a general legislative policy against the deduction of such interests in certain specified cases.

"There is no reason for us to interpolate in the statute, what might constitute an impingement on the legislative function, the additional fact that disability must arise as a direct result of damage directly inflicted by the person who is arrested or was sought to be arrested, assaulting the policeman or by any other means of external violence. As we set forth in *Caguas Bus Line, Inc.* v. *Comm'r of Labor,* 73 P.R.R. 690, 697 (1952), the Legislature in this case was fully aware of the problem, especially when in the same Session it enacted both pension statutes, foresaw the economic impact of this special pension providing for its payment from the Public Treasury without being subject to the solvency of a particular fund, and there is no reason for imposing restrictions that are not in the Act, more so when it is a generally applied rule that pension laws must be liberally interpreted in favor of the beneficiary in view of the remedial purpose for which they are enacted. [Citations.]"

The Court so stated in *López* v. *Muñoz, Governor, supra.*

. . . the proper authority shall credit *any* veteran *who may be a candidate for the said position or office*, in the examinations held *for the purpose* and in which he may participate, with five per cent. . . .

■ In view of such clear and explicit language and free from all ambiguity or doubt, the letter of the law should not be disregarded, according to the traditional rule of statutory construction consecrated in § 14 of the Civil Code, under the pretext of fulfilling its spirit. Here, spirit or intent and letter are the same thing. Section 2 was so worded by the lawmaker in order to give body and substance to his intent. The trial court, in reading into § 2 the restrictions which it has read without being said there, assumes that where a veteran takes or passes the initial examination for the Service *the process of incorporation* to civilian life is accomplished or terminated in this respect. In addition to the fact that the intrinsic correctness of the assumption may be dubious in the face of experience and complex factors which may come into play, or which should be evaluated in an entire process of incorporation of a veteran to civilian life, the lawmaker already passed proper judgment on the matter and thought necessary the mandate of § 2 without qualifications or limitations on its scope which he did not provide.

■ It was not incumbent on the trial court to modify the lawmaker's judgment with its own judgment on when proper incorporation takes place, or when the process of adjustment has terminated, restricting in that fashion the scope of § 2 of the Act by adding limitations which do not appear in its text. There is no room here for interpretation of what would be a dubious statute. The expression of the mandate contained in § 2 is clear and definitive.

The granting of benefits to veterans in the rating of additional *promotional* examinations is not unusual. Many

states have granted them and their validity has been sustained even in the face of constitutional contentions. As stated in *McNamara* v. *Director of Civil Service*, 110 N.E.2d 840 (Mass. 1953), the difference between the granting of benefits to veterans in original examinations for an office and the granting of *promotional* examinations is primarily a difference in degree rather than in principle. In *State* v. *Civil Service Com'n of City of Bridgeport*, 90 A.2d 862 (Conn. 1962), it is said that the determination of whether the public policy requires that preference be accorded to veterans in *promotional* examinations in the Police Department was a question to be answered solely by the legislature, and that it was not the province of the judicial power to pass or not on the wisdom of such measure. The Supreme Court of Connecticut did not find any vital distinction between the power of the legislature to grant preferences originally for holding employment and its power to grant them for promotion. *Cf.* *Herman* v. *Sturgeon*, 293 N.W. 488 (Iowa 1940), where the court said that there is no merit in the contention that the preference to veterans does not apply to promotional examinations, and comments that a particular section, in providing for preferences, expressly included the phrase "all examinations."

■ Assuming that the text of the statute in question were dubious as to call for interpretation, there is a further point. It is a well-settled rule of law that the administrative application and interpretation of a statute by those agencies expressly charged with its enforcement and with seeing to it that its purposes are ordinarily accomplished, should deserve great weight to the courts. In applying § 2 of the Veteran's Bill of Rights, the Office of Personnel, whose authority on the matter is unquestionable, has credited five per cent every time a veteran covered by the Act has taken and passed an examination. It expressly did so with the lists of eligibles of the Police. When the function to establish lists

of eligibles passed to the administration of that agency, the same rule was followed administratively.[2]

It is a significant fact that subsequent to 1947, and during the many years in which § 2 has been in force, the lawmaker has legislated in connection with Act No. 469 and at no time has altered or repudiated the administrative interpretation of that section, or the application thereof by the administrative agencies. The presumption is that he has sanctioned such interpretation.

■ To interpolate into § 2 by judicial fiat the restrictions which the trial court has read into it seems to me like a traditional case of judicial legislation which is not authorized nor desirable. It is up to the Legislature to determine whether or not a veteran has succeeded in incorporating himself to civilian life by taking an entrance examination for service, and whether he no longer needs the broad protection of § 2 as provided by the lawmaker who, as stated in the Declaration of Policy, considered it absolutely necessary to accomplish his purpose.

For the reasons stated, the judgment appealed from will be reversed and the complaint dismissed.

Mr. Justice Dávila dissented in an opinion joined by Mr. Justice Rigau and Mr. Justice Ramírez Bages.

—O—

MR. JUSTICE DÁVILA, with whom MR. JUSTICE RIGAU and MR. JUSTICE RAMÍREZ BAGES join, dissenting.

Plaintiff and other members of the Police in a similar situation took an examination for promotion to the rank

---

[2] In the Manual of Procedures of the Recruiting Division of the Office of Personnel, distributed by that Office among the officers in charge of the personnel of government agencies, it is provided that the preferences to veterans shall be credited in the ratings of *all* tests and establishment of lists, regardless of whether the veteran has already been accorded preference in some other test.

674

of Second Lieutenant offered by the Superintendent of Police. Those who passed the examination were included in a "List of Eligibles". The list was prepared according to the rating obtained. Some of the persons included in the list were credited with five per cent of the general rating computation because of their status as veterans, applying to that end § 2 of Act No. 469 of May 15, 1947 (29 L.P.R.A. § 762). The result of this was that persons such as plaintiff *who were nonveterans*[1] were affected in their opportunity for promotion, since some of the persons who received this additional rating were placed in a superior position in the order of the list.

Plaintiff challenged in the courts the legality of the action of the Superintendent of Police in granting this additional rating to those persons who already had received same on prior occasions. He prayed the court to order "defendant to revise the List of Eligibles for promotion to the rank of Second Lieutenant in order to eliminate the five points (*sic*) which have been credited to some persons in violation of the law, or discriminating against plaintiff and the persons placed in a similar situation."

The court ruled in his favor. It determined that the additional rating established by law in favor of veterans may be granted once only, in their initial examination for entrance or promotion. It ordered the Superintendent of Police to revise the list of eligibles, eliminating the additional

---

[1] The Act defines veteran as "any person native or resident of Puerto Rico who has belonged to the Armed Forces of the United States of America during the First World War, during the Second World War, or during the Korea War, whether male or female, and who has been in active service for a period of not less than three months and has been honorably discharged upon termination of said service. If said person has died in line of duty as member of said Armed Forces during the periods of the wars aforementioned, there shall be considered as veterans, for all purposes, the surviving spouse as long as he or she does not remarry, and, in default thereof, the children while they are under age." (29 L.P.R.A. § 774, Supp. 1964.)

rating granted to those veterans who had received this benefit on more than one occasion.

The issue hinges on the interpretation to be placed on § 2 of Act No. 469 of May 15, 1947, known as the Puerto Rican Veteran's Bill of Rights. It provides as follows:

"For the purposes of qualifying for any position or office in the Commonwealth service, the proper authority shall credit any veteran who may be a candidate for the said position or office, in the examinations held for the purpose and in which the said veteran may participate, with five (5) per cent of the general rating thereof."

This is one of the different benefits and preferences which the lawmaker deemed reasonable to grant to Puerto Rican veterans with a view to compensate in some measure those who as a result of war conditions were separated from the community where their life was organized. To facilitate the reinstatement of the veteran in his former community, in a new employment. To make more feasible his return to civilian life. To that effect, he stated in the Declaration of Policy of Act No. 469 of 1947, that: "In recognition of the valuable services rendered the country and the cause of democracy in the world by the Puerto Rican veterans during the First and Second World Wars, the following bill of rights of the Puerto Rican veteran is hereby established. There are herein fixed certain facilities, rights, benefits, and preferences in favor of the veterans of Puerto Rico, all of them absolutely necessary to accelerate the process of their incorporation to civilian life, improve their academic training and their technico-vocational skill, and provide the means to ensure their economic and social welfare."

In order to improve their academic training and technico-vocational skill, the Act provided for the expansion of the vocational schools system (§ 9), adult education program (§ 10), and granted the right to free tuition in the University and preference as regards assistance, scholarships,

and other benefits granted the students of the University (§ 11).

In order to ensure his economic and social welfare, he granted certain privileges in the application of the Income Tax Act and the Property Tax Act. As to the first, there was granted a special deduction of $500, in addition to other deductions provided by law, during 10 years (29 L.P.R.A. § 766). As to the second, there was granted an exemption of $10,000 over the assessed valuation of the property, also during a period of 10 years.

In its ruling the trial court said:

". . . In this case the Act should be construed in such a way that, as stated in the Declaration of Policy, the veterans may have the right to preference to accelerate the process of their incorporation in civilian life, but not to establish permanent discrimination in favor of a group of citizens over any others. The iniquity of that interpretation becomes more evident if it is considered that a privilege is granted to a veteran over a person who had no opportunity to serve his country as he did, for the reason that he was not old enough when the war broke out which caused the veteran to leave for the war front. The sensible interpretation of the law is to the effect that the veteran shall be entitled to five points[2] (*sic*) in an entrance or promotional examination, in order to help him incorporate himself in civilian life in his first opportunity to participate in a competition for employment."

This interpretation seems reasonable. It is in consonance with the legislative intent to make these measures temporary in character, as this intention appears from other provisions of the Act. The property-tax and income-tax privileges were limited to 10 years. The benefits for improving their academic training and technico-vocational skill are by themselves temporary. It is logical that the benefit of additional rating in the examinations be limited to the initial

---

[2] What the law grants is "five (5) per cent of the general rating thereof."

examination in which he participates in order to help him incorporate himself in civilian life. Because I believe so, I cannot concur in the opinion of the Court.

