COMMISSIONER OF PUBLIC WORKS *v.* CITY OF
MIDDLETOWN ET AL.
(AC 18141)

Landau, Sullivan and Dupont, Js.

---

Argued February 19—officially released May 25, 1999

*Trina A. Solecki,* city attorney, for the appellants (defendants).

*Paul K. Pernerewski,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (plaintiff).

*Opinion*

SULLIVAN, J. The defendants, the city of Middletown and its tax collector, appeal from the judgment rendered in favor of the plaintiff, the state commissioner of public works. The trial court found the property on which the Middletown courthouse was built to be tax exempt, discharged tax liens on the property as invalid and ordered their release. The defendants claim that the trial court (1) lacked subject matter jurisdiction to adjudicate the matter, (2) improperly determined that the subject property was tax exempt, (3) improperly found that the defendants' first, second, third and fifth special defenses were irrelevant and failed to rule on their seventh special defense and (4) improperly determined that the statutes invoked by the plaintiff were constitutional. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. On December 15, 1991, the plaintiff entered into a lease-purchase agreement with One Court Street, Inc. (developer), for the construction and use of a courthouse in Middletown. Certificates of participation, similar to a bond issue, provided the financing for the construction of the project. The holders of the certificates of participation were afterwards entitled to proportionate interests in the base rental payments made by the plaintiff. The lease agreement provides that, in addition to the rental payments, the plaintiff is responsible for all property taxes or assessments.

In 1993, the state legislature enacted General Statutes § 4b-46,[1] which exempts from municipal property taxation any property that is subject to a long-term financing agreement entered into by the commissioner of public works. The defendants assessed taxes on the property for the grand lists of 1994, 1995 and 1996. The plaintiff paid none of those taxes. The defendants placed liens on the property for the grand lists of 1994 and 1995.

I

The defendants first claim that the trial court lacked subject matter jurisdiction over this action. Specifically, the defendant argues that the trial court improperly concluded that the plaintiff had standing to bring an action under General Statutes § 49-51,[2] adjudicated the

[1] General Statutes § 4b-46 provides: "On and after July 1, 1995, any property which is subject to an agreement entered into by the Commissioner of Public Works for the purchase of such property through a long-term financing contract shall be exempt from taxation by the municipality in which such property is located, during the term of such contract. The assessed valuation of such property shall be included with the assessed valuation of state-owned land and buildings for purposes of determining the state grant in lieu of taxes under the provisions of section 12-19a."

[2] General Statutes § 49-51 (a) provides: "Any person having an interest in any real or personal property described in any certificate of lien, which lien is invalid but not discharged of record, may give written notice to the lienor sent to him at his last-known address by registered mail or by certified mail, postage prepaid, return receipt requested, to discharge the lien. Upon receipt of such notice, the lienor shall discharge the lien by sending a release sufficient under section 52-380d, by first class mail, postage prepaid, to the person requesting the discharge. If the lien is not discharged within thirty days of the notice, that person may apply to the Superior Court for such a discharge, and the court may adjudge the validity or invalidity of the lien and may award the plaintiff damages for the failure of the defendant to make discharge upon request. If the court is of the opinion that such certificate of lien was filed without just cause, it may allow, in its discretion, damages to any person aggrieved by such failure to discharge, at the rate of one hundred dollars for each week after the expiration of such thirty days, but not exceeding in the whole the sum of five thousand dollars or an amount equal to the loss sustained by such aggrieved person as a result of such failure to discharge the lien, which loss shall include, but not be limited to, a reasonable attorney's fee, whichever is greater."

defendants' tax liens invalid and ordered all of those tax liens discharged. We disagree.

### A

Section 49-51 (a) authorizes an action for the discharge of an invalid lien by "[a]ny person having an interest in any real or personal property described in any certificate of lien, which lien is invalid but not discharged of record . . . ." " '[W]here a statute or court rule sets prerequisites to suit by a particular plaintiff, a plaintiff not meeting the statutory criteria lacks standing and the court is said to lack jurisdiction over the case.' " *Gill* v. *Diorio*, 51 Conn. App. 140, 145, 720 A.2d 526 (1998). "Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. *Steeneck* v. *University of Bridgeport*, 235 Conn. 572, 579, 668 A.2d 688 (1995). Where a plaintiff lacks standing to sue, the court is without subject matter jurisdiction. Id., 580. Standing concerns the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute . . . . *United Cable Television Services Corp.* v. *Dept. of Public Utility Control*, 235 Conn. 334, 345, 663 A.2d 1011 (1995)." (Internal quotation marks omitted.) *Gill* v. *Diorio*, supra, 145.

The liened property is the subject of a lease-purchase agreement entered into by the plaintiff. Because § 4b-46 exempts from taxation property that is the subject of a long-term financing agreement entered into by the commissioner of public works, it follows that the plaintiff must necessarily have an "interest" sufficient to contest a tax lien on that very property by asserting protection under the statute. Courts must construe statutes in a manner that avoids absurd results. See *State* v. *DeFrancesco*, 235 Conn. 427, 437, 668 A.2d 348 (1995). It would be nonsensical to suggest that the legislature

would exempt such a property from taxation under § 4b-46 while prohibiting the discharge of an invalid lien on such tax exempt property. We conclude that the trial court properly determined that the plaintiff had standing to bring this action.

B

The defendants next contend that the plaintiff's failure to prove that it had complied with the statutory notice requirements of § 49-51 divested the court of subject matter jurisdiction, and, therefore, that the court improperly adjudicated the liens invalid.

Section 49-51 allows a person seeking a discharge to "give written notice to the lienor sent to him at his last-known address by registered mail or by certified mail, postage prepaid, return receipt requested, to discharge the lien. . . . If the lien is not discharged within thirty days of the notice, that person may apply to the Superior Court for such a discharge, and the court may adjudge the validity or invalidity of the lien . . . ."

"Not unlike the dissolution of an attachment, the discharge of a lien is a statutory proceeding . . . . The statute confers a definite jurisdiction upon a judge and it defines the conditions under which such relief may be given . . . . In such a situation jurisdiction is only acquired if the essential conditions prescribed by [the] statute are met. If they are not met, the lack of jurisdiction is [one] over the subject-matter and not over the parties. *D'Andrea* v. *Rende*, 123 Conn. 377, 380, 195 A. 741 (1937). The essential condition of an action under General Statutes 49-51 is written notice to the lienor sent to him at his last-known address by registered mail or by certified mail, postage prepaid, return receipt requested, to discharge the lien in the office where recorded." (Internal quotation marks omitted.) *Guilford Yacht Club Assn., Inc.* v. *Northeast Dredging, Inc.*, 192 Conn. 10, 13, 468 A.2d 1235 (1984).

The lienee normally bears the burden of establishing compliance with the notice requirement. Id. Nonetheless, where a lienee's complaint alleges compliance and a lienor's answer so admits, that answer constitutes a judicial admission, removes the issue from dispute and makes the lienee's proof unnecessary. *Jones Destruction, Inc.* v. *Upjohn*, 161 Conn. 191, 199, 286 A.2d 308 (1971) (defendant's admission in answer to allegation in complaint of due notice of intention to claim lien was judicial admission and made plaintiff's proof unnecessary).

The plaintiff alleged in paragraph six of its application for discharge that "[b]y letter dated March 7, 1996, the Applicant, in accordance with Conn. Gen. Stat. § 49-51, gave notice, by certified mail, to the defendants that the Lien was invalid and made demand that the defendants have the Lien discharged. . . ." Paragraph six of the defendants' answer "denies so much of that portion of paragraph 6. that reads as follows: 'that the lien was invalid' and admits the remainder of the allegations contained in paragraph 6. of the plaintiff's Application." By admitting the statutory compliance alleged in the application, the defendants made a judicial admission that removed that issue from dispute. The plaintiff did not need to make any further proof.

C

The defendants further claim that the trial court improperly discharged all of the liens on the subject property. The defendants argue that, because the plaintiff's application addressed only the lien for taxes on the 1994 grand list, the trial court had the authority under § 49-51 to discharge the lien only for the 1994 taxes. We disagree.

"Levying a tax on property exempt from taxation would be an illegal exaction." *Faith Center, Inc.* v. *Hartford*, 192 Conn. 434, 437, 472 A.2d 16, cert. denied,

469 U.S. 1018, 105 S. Ct. 432, 83 L. Ed. 2d 359 (1984). In addition to the statutory procedure for the discharge of an invalid lien, courts have an equitable power to invalidate and discharge liens in special, limited instances. See *Fourth New London NSB Quarters, Inc.* v. *Wyoming Valley Contractors, Inc.*, 22 Conn. Sup. 293, 296, 170 A.2d 737 (1961).

The trial court properly adjudged the property tax exempt after July 1, 1995, under § 4b-46. Because the property was tax exempt, the defendants could not levy a tax on the property, and the attempt to do so was an illegal exaction. It follows, therefore, that any lien placed on the property to enforce such an illegal exaction is invalid and subject to discharge. To allow such a lien to stand would fly in the face of logic and common sense. The adjudication of one of these liens involves the identical issues and the same considerations as would the adjudication of another. Therefore, in the interests of fairness and judicial economy, we will not require further proceedings for the discharge of other invalid liens.

II

The defendants next claim that the trial court improperly determined, as a matter of law, that the Middletown courthouse project was structured as a long-term financing agreement exempted from taxation under § 4b-46. The defendants argue that the agreement is merely a lease with an option to purchase that is not exempted by the statute. We disagree.

Section 4b-46 exempts from property taxation any property that is the subject of a long-term financing agreement entered into by the commissioner of public works. The resolution of this issue hinges on the determination of the nature of the plaintiff's agreement. Whether a particular arrangement constitutes a lease agreement or a long-term financing agreement depends

on the entire circumstances and purpose of the instruments in question rather than the form or title given to a document. See *E-Z Livin' Mobile Sales, Inc.* v. *Van Zanen*, 26 Ariz. App. 363, 548 P.2d 1175 (1976); *Bolling* v. *Hawthorne Coal & Coke Co.*, 197 Va. 554, 90 S.E.2d 159 (1955). The understanding of the parties, the length of the lease term, the party made responsible for taxes and other assessments, and the amount required to exercise the "option" are relevant to this determination. See *E-Z Livin' Mobile Sales, Inc.* v. *Van Zanen,* supra, 365.

Our examination of the structure of the project discloses that the arrangement was a long-term financing agreement. The lessee state issued certificates of participation, similar to a bond issue, the proceeds of which financed the lessor developer's construction of the courthouse. The developer, which assigned its interest to State Street Bank & Trust Co., as trustee, would then lease the courthouse to the state with the base rental payments going to a trustee account held for the benefit of the investors who had purchased certificates of participation.

During the term of the lease, the state was responsible for all tax payments. Although the trustee held title during the term of the lease, title transfers to the state at the end of the lease term with the nominal payment of $100 and sixty days written notification by the state. The $100 dollar payment is certainly not reflective of value of the project, which would be the case in a typical option purchase. See id., 365; see also 7 P. Rohan, Current Leasing Law and Techniques (1998) § 4C.01[2], p. 4C-26 (option price typically reflects fair market value). The plaintiff's statement in its application for discharge, which stated that it possessed a leasehold interest and an option to purchase, is accurate, but in no way does it conflict with the conclusion that the

project is also a long-term financing agreement. The lease is merely part of that larger agreement.

The legislative history of § 4b-46 further supports this interpretation of the agreement by specifically mentioning the applicability of the statute to the Middletown courthouse.[3] The comments in the legislature indicate that the proponents of the legislation were aware of the Middletown courthouse project, considered it to be a long-term financing contract and specifically intended that it and similarly financed projects be exempted from municipal taxation. Because the arrangement was a long-term financing agreement, we conclude that the trial court properly applied § 4b-46.

## III

The defendants next claim that the trial court improperly found as a matter of law that the defendants' first,

[3] "Rep. [Richard T.] Mulready . . . This amendment has to do with certain properties that the state essentially enters into agreements for what amounts to as an installment sale, but a long term sale leaseback and it just provides that in those cases where there are agreements that are not already in effect, that the pilot payment will kick in after July, 1, 1995 so that these municipalities are not negatively impacted in the next two budget years.

\* \* \*

"Rep. [Richard O.] Belden . . . Thank you, Mr. Speaker. I rise to support this amendment. Since the state has now entered into a new approach on how to acquire some of the facilities through a long term purchase contract and this would essentially put the balance regarding taxes and tax payments correctly. Thank you.

\* \* \*

"Rep. Mulready . . . Through you, Mr. Speaker, under any circumstances, under any cases that fit under this bill, *such as the Middletown Courthouse,* the municipality would be able to collect its full tax for the next few years. Otherwise, under a normal type of pilot arrangement, they'd only be subject to the pilot for the next couple of years, so it benefits the municipalities that would—it would benefit those municipalities that have this type of arrangement.

"Rep. [Claudia M.] Powers . . . Through you, Mr. Speaker, then you're saying this is a net positive gain for the town until 1995?

"Rep. Mulready . . . Through you, Mr Speaker, yes, *although I'm not aware of any other circumstances at the moment besides the Middletown Courthouse.*" (Emphasis added.) 36 H.R. Proc., Pt. 33, 1993 Sess., pp. 11,965–67.

second, third and fifth special defenses were irrelevant and inapplicable to the facts of the case and did not address the seventh special defense. We disagree.

The first special defense asserts that § 4b-46 provides no relief for the plaintiff because there was no long-term financing agreement. For the reasons we discussed in part II of this opinion, we disagree with the defendants and conclude that the trial court properly determined that the first special defense is inapplicable here.

The second special defense alleges that the plaintiff is estopped from claiming tax exemption because, when the city conveyed a parcel of land for the project to the developer, it believed that that parcel would henceforth be fully taxable. The promissory estoppel argument fails for several reasons. As an element of estoppel, "the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief . . . ." (Internal quotation marks omitted.) *Wellington Systems, Inc.* v. *Redding Group, Inc.*, 49 Conn. App. 152, 162, 714 A.2d 21, cert. denied, 247 Conn. 905, 720 A.2d 516 (1998). Even if we assume that some representations were made to the city, the plaintiff in this case was a third party to whatever understanding the developer and the city may have reached. " 'In addition, estoppel against a public agency is limited and may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency.' *Kimberly-Clark Corp.* v. *Dubno*, 204 Conn. 137, 148, 527 A.2d 679 (1987). Finally, a claim for promissory estoppel will not lie against the state unless 'the party claiming estoppel would be subjected to substantial loss if the public agency were permitted to negate the acts of its agents.'

Id." *Chotkowski* v. *State*, 240 Conn. 246, 268–69, 690 A.2d 368 (1997).

The third special defense argues that the plaintiff cannot claim exemption pursuant to General Statutes § 12-81 (2).[4] The plaintiff does not make such a claim. Section 4b-46 provides the basis for the plaintiff's claim of tax exemption. We, therefore, conclude that the trial court properly determined that the third special defense is inapplicable and irrelevant.

The fifth special defense argues that General Statutes § 12-111 statutorily bars the plaintiff's application for discharge as untimely. Because this action is not an appeal brought under § 12-111 but instead an action for discharge under § 49-51, we conclude that the trial court properly determined that the fifth special defense is irrelevant.

The seventh special defense was not specifically addressed by the trial court's memorandum of decision. The defendants failed to move for articulation, and the posttrial brief alluded to by the defendants is nowhere in the record. We therefore conclude that the record is inadequate for review on this point.

## IV

The defendants finally claim that the trial court improperly determined that § 4b-46 was lawfully enacted and constitutional. First, the defendants claim that the statute violates the prohibition on special privileges contained in article first, § 1, of the Connecticut constitution. Second, the defendants claim that the statute violates the takings clause of the state constitution. We disagree.

---

[4] General Statutes § 12-81 provides in relevant part: "The following-described property shall be exempt from taxation . . . (2) State property and reservation land. Property belonging to, or held in trust for, this state and reservation land held in trust by the state for an Indian tribe . . . ."

A

"Article first, § 1, of the Connecticut constitution provides that 'no man or set of men are entitled to exclusive public emoluments or privileges from the community.' A state statute is invalid under this clause only if it 'directs the granting of an emolument or privilege to an individual or class without any purpose, expressed or apparent, to serve the public welfare thereby . . . .' *Warner* v. *Gabb*, 139 Conn. 310, 313, 93 A.2d 487 (1952) . . . ." (Citations omitted.) *Shelton* v. *Commissioner*, 193 Conn. 506, 519, 479 A.2d 208 (1984). "[I]f enacted [to further a public purpose] legislation can be sustained even though it may incidentally confer a direct benefit upon an individual or a class." *State ex rel. Higgins* v. *Civil Service Commission*, 139 Conn. 102, 106, 90 A.2d 862 (1952).

Our Supreme Court has "taken a broad view of the legislative goals that may constitute a public purpose. . . . [A]n act serves a public purpose under article first, § 1, when it promote[s] the welfare of the state; *Tough* v. *Ives*, [162 Conn. 274, 292, 294 A.2d 67 (1972)]; or when the principal reason for the appropriation is to benefit the public. *Roan* v. *Connecticut Industrial Building Commission*, 150 Conn. 333, 339, 189 A.2d 399 [1963]." (Internal quotation marks omitted.) *Beccia* v. *Waterbury*, 192 Conn. 127, 134, 470 A.2d 1202 (1984).

Section 4b-46 serves a public purpose in that it benefits the taxpayers of Connecticut. Absent the tax exemption, the state would be liable for any municipal tax assessments against the property. Contrary to the defendant's assertion, the relevant test is not whether a statute adversely affects some persons, such as the taxpayers of Middletown, but rather whether it promotes a public purpose more generally.[5]

---

[5] The defendants offer nothing to support their claim of detriment to Middletown or its residents. There are, in fact, indications to the contrary. In the House debate, the proponents of the legislation stated that there

## B

The defendants challenge the constitutionality of the statute under article first, § 11, of the state constitution.[6] We decline to review that claim because it was not timely raised and because there is an insufficient record.[7]

## C

The defendants finally claim that the trial court improperly applied § 4b-46 retroactively rather than prospectively. We disagree.

Section 4b-46 provides in relevant part that "[o]n and after July 1, 1995, any property which is subject to an agreement entered into by the Commissioner of Public Works for the purchase of such property through a long-term financing contract shall be exempt from taxation by the municipality in which such property is located, during the term of such contract. . . ."

Although we agree with the defendants that the plain language of the statute is dispositive, we conclude that the defendants' reading of the statute is incorrect. The statute plainly exempts a class of property—property subject to a long-term financing agreement by the commissioner of public works—from municipal taxation on or after July 1, 1995. The statute specifically does not qualify that class of property by requiring that the

---

would be no negative impact on the town. The statute itself provides for the state to make payments in lieu of taxes (PILOT). In response to a question at oral argument, the state indicated that the PILOT payment would be nearly equivalent to the tax assessment.

[6] The constitution of Connecticut, article first, § 11, provides: "The property of no person shall be taken for public use, without just compensation therefor."

[7] The defendants concede that the issue was not raised at trial but claim that the issue was raised in a January 9, 1998 posttrial brief filed with the trial court before it issued its memorandum of decision. The record before us contains no such brief nor does the memorandum of decision allude to such a brief or to the issues allegedly raised therein.

agreement be entered into on or by July 1, 1995, as the defendants assert.

The judgment is affirmed.

In this opinion the other judges concurred.