# Luz Serrano *v.* Aetna Insurance Company (14944)

Callahan, Norcott, Katz, Palmer and Lavery, Js.

Argued December 8, 1994—decision released June 13, 1995

*William J. Sweeney, Jr.*, with whom, on the brief, was *David M. Fisher*, for the appellant (plaintiff).

*Eugene A. Cooney*, with whom was *Rodd J. Mantell*, for the appellee (defendant).

*William F. Gallagher, Cynthia C. Bott, Kurt D. Koehler* and *Thomas J. Airone*, law student intern, filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

PALMER, J. This appeal requires us to decide whether § 3 of No. 93-77 of the 1993 Public Acts (P.A. 93-77),[1]

---

[1] Public Acts 1993, No. 93-77, entitled "An Act Concerning Uninsured and Underinsured Motorists Insurance Coverage," provides:

"Section 1. Section 38a-290 of the general statutes is repealed and the following is substituted in lieu thereof:

"No insurance company doing business in this state shall limit the time within which any suit shall be brought against it or [, with respect to subdivision (d) of this section,] any claim shall be submitted to arbitration on (a) a fidelity or surety bond to a period less than three years from the time when the loss insured against occurs; (b) a construction performance bond to a period less than three years from the date on which the principal last performed work under the contract; (c) a construction payment bond to a period less than three years from the date on which the claimant last performed work or supplied material for which the claim is made; [(d) the uninsured motorist provisions of a motor vehicle insurance policy to a period less than two years from the date of the accident;] and [(e)] *(d)* all other policies to a period less than one year from the time when the loss insured against occurs. THIS SECTION SHALL NOT APPLY TO SUITS AND ARBITRATION CLAIMS UNDER THE UNINSURED OR UNDERIN-

which retroactively modifies the uninsured and underinsured motorist provisions of certain automobile liabil-

SURED MOTORIST PROVISIONS OF A MOTOR VEHICLE INSUR-
ANCE POLICY.

"Sec. 2. Section 38a-336 of the general statutes is repealed and the following is substituted in lieu thereof:

"(a) (1) Each automobile liability insurance policy shall provide insurance, herein called uninsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom. Each insurer licensed to write automobile liability insurance in this state shall provide uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but the insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of the policy issued to the named insured. No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle or motorcycle that is owned by such insured.

"(2) Notwithstanding any provision of this section to the contrary, each automobile liability insurance policy issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by the insured.

"(b) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage.

"(c) Each automobile liability insurance policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include

ity insurance policies, comports with the United States and Connecticut constitutions. The plaintiff, Luz Ser-

a provision for final determination of insurance coverage in such arbitration proceeding. With respect to any claim submitted to arbitration on or after October 1, 1983, the arbitration proceeding shall be conducted by a single arbitrator if the amount in demand is forty thousand dollars or less or by a panel of three arbitrators if the amount in demand is more than forty thousand dollars.

"(d) For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subsection (b) of this section.

"(e) NO INSURANCE COMPANY DOING BUSINESS IN THIS STATE MAY LIMIT THE TIME WITHIN WHICH ANY SUIT MAY BE BROUGHT AGAINST IT OR ANY DEMAND FOR ARBITRATION ON A CLAIM BE MADE ON THE UNINSURED OR UNDERINSURED MOTORIST PROVISIONS OF A MOTOR VEHICLE POLICY TO A PERIOD OF LESS THAN THREE YEARS FROM THE DATE OF ACCIDENT, PROVIDED, IN THE CASE OF AN UNDERINSURED MOTORIST CLAIM THE INSURED MAY TOLL ANY APPLICABLE LIMITATION PERIOD (1) BY NOTIFYING SUCH INSURER PRIOR TO THE EXPIRATION OF THE APPLICABLE LIMITATION PERIOD, IN WRITING, OF ANY CLAIM WHICH THE INSURED MAY HAVE FOR UNDERINSURED MOTORIST BENEFITS AND (2) BY COMMENCING SUIT OR DEMANDING ARBITRATION UNDER THE TERMS OF THE POLICY NOT MORE THAN ONE HUNDRED EIGHTY DAYS FROM THE DATE OF EXHAUSTION OF THE LIMITS OF LIABILITY UNDER ALL AUTOMOBILE BODILY INJURY LIABILITY BONDS OR AUTOMOBILE INSURANCE POLICIES APPLICABLE AT THE TIME OF THE ACCIDENT BY SETTLEMENTS OR FINAL JUDGMENTS AFTER ANY APPEALS.

"Sec. 3. (New) No uninsured or underinsured motorist claim or action pending on December 8, 1992, or brought after said date and prior to the effective date of this act, in which a settlement has not been reached or a final judgment has not been rendered prior to the effective date of this act, shall fail by reason of any contractual limitation in a motor vehicle insurance policy which limits the time within which such claim shall be submitted to arbitration or such action shall be commenced to a period of time less than that allowed under section 38a-336 of the general statutes, as amended by section 2 of this act.

"Sec. 4. This act shall take effect from its passage."

Because § 3 of P.A. 93-77 is deemed to be special in nature, it has not been codified.

rano, was insured under an automobile liability policy issued by the defendant, Aetna Insurance Company, that required her to file an uninsured or underinsured motorist claim within two years from the date of an accident. The plaintiff commenced this action for underinsured motorist benefits more than two years from the date of the accident, claiming, inter alia, that her right to commence an action for such benefits had been restored by § 3 of P.A. 93-77. The trial court rejected the plaintiff's claim, concluding that the act's purported modification of the terms of the policy violated the defendant's contractual rights under the United States constitution. Thereafter, the trial court granted the defendant's motion for summary judgment on the ground that the action had not been filed within two years from the date of the accident as required by the policy. The plaintiff appealed from the judgment of the trial court to the Appellate Court, which remanded the case to the trial court for an articulation of the facts and the law underlying its judgment. The trial court rendered its articulation and, thereafter, the case was transferred to this court pursuant to General Statutes § 51-199 (b) (2)[2] and Practice Book § 4027. We reverse the judgment of the trial court.

The relevant facts are undisputed. On May 23, 1989, the plaintiff, while operating an automobile owned by her mother, sustained injuries resulting from an accident caused by the negligence of the driver of a second automobile (tortfeasor). At the time of the accident, the tortfeasor was covered by an insurance policy with liability limits of $20,000. The plaintiff was insured under an automobile liability policy issued by the defendant to her mother.[3] Under the underinsured

[2] General Statutes § 51-199 (b) (2) provides in relevant part: "The following matters shall be taken directly to the supreme court . . . (2) an appeal in any matter where the superior court declares invalid a state statute . . . ."

[3] The plaintiff was an insured person under the policy because she was living with her mother at the time of the accident.

motorist provisions of that policy,[4] which provided coverage for, inter alia, damages and injuries sustained as a result of the negligence of the owner or operator of an underinsured motorist, the defendant was obligated to pay to the plaintiff all sums, up to a maximum of $100,000, that she would be entitled to recover from the tortfeasor after the plaintiff had exhausted the liability limits of the tortfeasor's policy.[5] The policy issued by the defendant also required that an insured bring a claim or suit under the policy within two years from the date of the accident.[6]

On April 16, 1991, the plaintiff commenced an action against the tortfeasor seeking damages arising from the accident. In the fall of 1991, the plaintiff's claim against the tortfeasor was settled for $20,000, thereby exhausting the liability limits of the tortfeasor's policy. By complaint dated January 13, 1992, the plaintiff instituted this action against the defendant for underinsured motorist benefits. The plaintiff also filed with the defendant a written demand for benefits dated January 30, 1992. The defendant rejected the demand as untimely and, thereafter, moved for summary judgment on the plaintiff's action, claiming that she had failed to file a suit or claim for underinsured motorist benefits within two years of the accident as required by the policy.

[4] See General Statutes (Rev. to 1989) § 38-175c, now revised and recodified as General Statutes § 38a-336.

[5] The policy under which the plaintiff was insured contained a provision reducing the limits of the defendant's liability for underinsured motorist benefits by the amount paid by or on behalf of the tortfeasor. Accordingly, the defendant's potential liability to the plaintiff under the policy is $80,000.

[6] Prior to the enactment of P.A. 93-77, an insurance company could not limit the period for the filing of a claim for uninsured or underinsured motorist benefits to less than two years. General Statutes (Rev. to 1993) § 38a-290 (formerly § 38-27). Public Act 93-77 extended to at least three years, and longer under its tolling provisions, the minimum time period that may contractually be required for the filing of uninsured or underinsured motorist claims. See footnote 1.

Public Act 93-77 took effect on May 20, 1993, during the pendency of this litigation. Section 3 of P.A. 93-77 provides, inter alia, that no claim for underinsured motorist benefits that was pending on December 8, 1992, and in which a settlement had not been reached or a final judgment rendered prior to May 20, 1993, shall be barred by virtue of any policy provision limiting the period for the filing of a claim to less than the three year period, with tolling provisions, allowed under General Statutes § 38a-336, as amended by § 2 of P.A. 93-77.[7] The plaintiff claimed that because her action for underinsured motorist benefits was governed

---

[7] Public Act 93-77 was enacted in response to our decisions, rendered on December 8, 1992, in *McGlinchey* v. *Aetna Casualty & Surety Co.*, 224 Conn. 133, 617 A.2d 445 (1992), and *Hotkowski* v. *Aetna Life & Casualty Co.*, 224 Conn. 145, 617 A.2d 451 (1992), wherein we concluded that an insurer was entitled to enforce an unambiguous policy provision requiring an insured to file an action for underinsured motorist benefits within two years from the date of the accident. It had been unclear, prior to the publication of *McGlinchey* and *Hotkowski*, whether General Statutes (Rev. to 1987) § 38-27, now revised and recodified as General Statutes § 38a-290, authorized an insurer to limit contractually the period within which a claim for underinsured motorist benefits could be brought and, if so, whether the limitation period was tolled while the insured, in accordance with our decision in *Continental Ins. Co.* v. *Cebe-Habersky*, 214 Conn. 209, 212–13, 571 A.2d 104 (1990), sought to exhaust the liability limits of the tortfeasor's policy as mandated by General Statutes (Rev. to 1989) § 38-175c, now revised and recodified as § 38a-336. Consequently, prior to December 8, 1992, some insureds, either in the good faith but mistaken belief that they were required, under our holding in *Cebe-Habersky*, to exhaust the liability limits of the tortfeasor's policy before filing an action for underinsured motorist benefits, or, in reliance on the holdings of Superior Court decisions, subsequently overruled by *McGlinchey* and *Hotkowski*, that a contractual two year limitation period for the filing of an underinsured motorist claim was unenforceable; see footnote 17; had failed to commence an action for underinsured motorist benefits until more than two years from the date of the accident. After we concluded, in *McGlinchey* and *Hotkowski*, that those claims were barred by the two year limitation period, the legislature enacted § 3 of P.A. 93-77, which precludes an insurer from enforcing, for the category of cases enumerated therein, any contractual limitation period less than that allowed under § 38a-336, as amended by § 2 of P.A. 93-77. See part I of this opinion.

by the terms of § 3, the two year limitation period of the policy was unenforceable. The defendant conceded that § 3 of P.A. 93-77, by its terms, applied to the plaintiff's action,[8] but argued that its retroactive modification of the terms of the policy violated the defendant's due process and contractual rights guaranteed by the United States constitution.

The trial court found that the plaintiff had not filed an action or claim against the defendant within two years from the date of the accident as required under the policy.[9] The trial court further held that because the plaintiff's right to seek underinsured motorist benefits had already expired under the otherwise lawful provisions of the policy, § 3 of P.A. 93-77 operated as a substantial and unjustified impairment of the parties' contractual relationship in contravention of the contract clause of article one, § 10, of the United States

[8] Section 3 of P.A. 93-77 "was written to have a retroactive effect on the rights of the parties." *Aetna Life & Casualty Co.* v. *Braccidiferro*, 34 Conn. App. 833, 842, 643 A.2d 1305 (1994), cert. granted, 232 Conn. 901, 651 A.2d 743 (1995). Because the plaintiff's action was pending on December 8, 1992, and had not been finally adjudicated by May 20, 1993, there is no dispute that § 3 of P.A. 93-77, by its terms, applies to this case.

[9] The plaintiff conceded that she had neither filed an action against the defendant nor made a specific demand for underinsured motorist benefits within two years from the date of the accident as required under the policy. She argued, however, that her action was not time barred because the defendant had received notice of her intent to make a claim and, furthermore, that the defendant had not been prejudiced by her failure to comply with the limitation period prescribed by the policy. The trial court rejected the plaintiff's arguments, concluding first that the insurance policy required the plaintiff to file an action or claim, as distinguished from merely placing the defendant on notice of her intent to do so, within two years from the date of the accident. The court further found that even if that requirement could be satisfied by providing notice of a claim within two years from the date of the accident, the plaintiff had failed to do so and, moreover, that she had not alleged facts sufficient to overcome the presumption that her failure to file an action within two years of the accident had materially prejudiced the defendant. See *Hotkowski* v. *Aetna Life & Casualty Co.*, 224 Conn. 145, 148–49, 617 A.2d 451 (1992); *Aetna Casualty & Surety Co.* v. *Murphy*, 206 Conn. 409, 418–20, 538 A.2d 219 (1988).

constitution. The court therefore refused to apply § 3 of P.A. 93-77 to nullify the two year limitation period of the policy and, accordingly, granted the defendant's motion for summary judgment on the ground that the plaintiff's action was time barred under that policy provision.

On appeal, the plaintiff contends that § 3 of P.A. 93-77 is constitutional and, consequently, that the trial court improperly rendered summary judgment for the defendant on the ground that her action was untimely.[10] The defendant claims that the trial court correctly held that § 3 violates its contractual rights under article one, § 10, of the United States constitution. The defendant further contends, as alternate grounds for affirmance, that § 3 violates both the due process clause of the fourteenth amendment to the federal constitution, and article first, § 1, of our state constitution. We conclude that § 3 of P.A. 93-77 passes muster under each of these constitutional provisions[11] and, accordingly, we reverse the judgment of the trial court.

I

The plaintiff claims that the trial court improperly concluded that § 3 of P.A. 93-77 violates the contract clause of article one, § 10, of the United States constitution. We agree with the plaintiff.

The constitution of the United States, article one, § 10, provides that "[n]o State shall . . . pass any

---

[10] The plaintiff also claims that the trial court incorrectly determined that she had failed to allege facts sufficient to sustain her claim that the defendant had suffered no material prejudice as a consequence of the plaintiff's noncompliance with the two year limitation period of the policy. Because we conclude that the contractual limitation period was rendered unenforceable by § 3 of P.A. 93-77, we do not reach this claim.

[11] Subsequent to the articulation filed by the trial court, the Appellate Court, in *Aetna Life & Casualty Co.* v. *Braccidiferro*, 34 Conn. App. 833, 643 A.2d 1305 (1994), cert. granted, 232 Conn. 901, 651 A.2d 743 (1995), rejected a constitutional challenge to § 3 of P.A. 93-77 identical to that raised by the defendant in this appeal.

. . . Law Impairing the Obligation of Contracts
. . . ." Although the language of the contract clause
speaks in absolute terms, "literalism in the construc-
tion of the . . . clause . . . would make it destruc-
tive of the public interest by depriving the State of its
prerogative of self-protection." (Internal quotation
marks omitted.) *Allied Structural Steel Co.* v. *Span-
naus*, 438 U.S. 234, 240, 98 S. Ct. 2716, 57 L. Ed. 2d
727 (1978); see also *Keystone Bituminous Coal Assn.*
v. *DeBenedictis*, 480 U.S. 470, 502, 107 S. Ct. 1232,
94 L. Ed. 2d 472 (1987); *Connecticut Education Assn.,
Inc.* v. *Tirozzi*, 210 Conn. 286, 301, 554 A.2d 1065
(1989). The constitutional prohibition against the
impairment of contractual obligations, therefore, must
be accommodated to the state's interest in safeguard-
ing the welfare of its citizens. *Energy Reserves Group,
Inc.* v. *Kansas Power & Light Co.*, 459 U.S. 400, 410,
103 S. Ct. 697, 74 L. Ed. 2d 569 (1983); *United States
Trust Co.* v. *New Jersey*, 431 U.S. 1, 16, 21, 97 S. Ct.
1505, 52 L. Ed. 2d 92 (1977). Thus, states must be
allowed to exercise their broad police power to enact
general regulatory measures without fear "that private
contracts will be impaired, or even destroyed, as a
result." *United States Trust Co.* v. *New Jersey*, supra,
22. Accordingly, "a statute does not violate the
[c]ontract [c]lause simply because it has the effect of
restricting, or even barring altogether, the perform-
ance of duties created by contracts entered into prior
to its enactments."[12] *Exxon Corp.* v. *Eagerton*, 462 U.S.
176, 190, 103 S. Ct. 2296, 76 L. Ed. 2d 497 (1983). Our
task, therefore, is to balance the competing private and
public interests at stake when the state seeks to adjust
existing contractual relationships.

---

[12] As Justice Holmes observed long ago, "[o]ne whose rights, such as they
are, are subject to state restriction, cannot remove them from the power
of the State by making a contract about them. The contract will carry with
it the infirmity of the subject matter." *Hudson County Water Co.* v.
*McCarter*, 209 U.S. 349, 357, 28 S. Ct. 529, 52 L. Ed. 828 (1908).

In adjudicating a claim that a legislative enactment runs afoul of the contract clause, we must "first ask whether the change in [the] law has operated as a substantial impairment of a contractual relationship." (Internal quotation marks omitted.) *General Motors Corp.* v. *Romein*, 503 U.S. 181, 186, 112 S. Ct. 1105, 117 L. Ed. 2d 328 (1992); see also *Energy Reserves Group, Inc.* v. *Kansas Power & Light Co.*, supra, 459 U.S. 411; *Schieffelin & Co.* v. *Dept. of Liquor Control*, 194 Conn. 165, 177, 479 A.2d 1191 (1984). "This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *General Motors Corp.* v. *Romein*, supra, 186; see also *Energy Reserves Group, Inc.* v. *Kansas Power & Light Co.*, supra, 411; *Allied Structural Steel Co.* v. *Spannaus*, supra, 438 U.S. 244. If upon application of this test it appears that the challenged legislation substantially impairs existing contract rights, the enactment may nevertheless withstand constitutional scrutiny if it serves a significant and legitimate public purpose; *Energy Reserves Group, Inc.* v. *Kansas Power & Light Co.*, supra, 411–12; *United States Trust Co.* v. *New Jersey*, supra, 431 U.S. 22; *Schieffelin & Co.* v. *Dept. of Liquor Control*, supra, 182; and its "adjustment of the rights and responsibilities of [the] contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption." (Internal quotation marks omitted.) *Energy Reserves Group, Inc.* v. *Kansas Power & Light Co.*, supra, 412; see also *United States Trust Co.* v. *New Jersey*, supra, 22; *Schieffelin & Co.* v. *Dept. of Liquor Control*, supra, 184.

Because § 3 of P.A. 93-77 restores to the plaintiff a right that had expired under the otherwise enforceable provisions of the policy, the defendant's claim that the legislation operates as an impairment of a preexisting

contractual relationship cannot seriously be contested. However, "a finding that there has been a technical impairment is merely a preliminary step in resolving the more difficult question whether that impairment is permitted under the Constitution." *United States Trust Co.* v. *New Jersey*, supra, 431 U.S. 21; see also *Connecticut Education Assn., Inc.* v. *Tirozzi*, supra, 210 Conn. 301–302. The issue ultimately to be determined, therefore, is whether the impairment is substantial. *General Motors Corp.* v. *Romein*, supra, 503 U.S. 185–86. We are not persuaded that § 3 substantially impairs the parties' rights and obligations under the automobile liability insurance policy issued by the defendant.[13]

Several factors are to be considered in determining the degree to which the challenged enactment operates as an impairment of the parties' contractual relationship. These include "the severity of the impairment, the extent to which it frustrates a party's reasonable contractual expectations and the extent to which the subject matter of the impairment has been regulated in the past." *Schieffelin & Co.* v. *Dept. of Liquor Control*, supra, 194 Conn. 177–78; see also *Energy Reserves Group, Inc.* v. *Kansas Power & Light Co.*, supra, 459 U.S. 411; *Allied Structural Steel Co.* v. *Spannaus*, supra, 438 U.S. 245–47, 250. "Minimal alteration of contractual obligations may end the inquiry at its first

---

[13] We have long held that a proper respect for a coordinate branch of government requires the exercise of caution in adjudicating constitutional challenges to legislation. See, e.g., *State ex. rel Andrew* v. *Lewis*, 51 Conn. 113, 127–28 (1883); *Hartford Bridge Co.* v. *Union Ferry Co.*, 29 Conn. 210, 227 (1860). Accordingly, "[i]n our assessment of whether [§ 3 of P.A. 93-77] passes constitutional muster, we proceed from the well recognized jurisprudential principle that the party attacking a validly enacted statute . . . bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt and we indulge in every presumption in favor of the statute's constitutionality." (Citations omitted; internal quotation marks omitted.) *State* v. *Ross*, 230 Conn. 183, 236, 646 A.2d 1318 (1994), cert. denied, U.S. , 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995).

stage." *Allied Structural Steel Co.* v. *Spannaus*, supra, 245. "If, however, the impairment is severe, the legislation will be subjected to an increased level of scrutiny." *Schieffelin & Co.* v. *Dept. of Liquor Control*, supra, 178.

The automobile liability insurance policy under which the plaintiff was insured required her to file a claim or action for underinsured motorist benefits not later than two years from the date of the accident. The trial court concluded that the plaintiff had not done so and, furthermore, that she had failed to establish circumstances sufficient to excuse her noncompliance with the two year limitation period of the policy.[14] Thus, the court concluded that the plaintiff's unexcused failure to commence an action within the contractually required time period relieved the defendant of any liability to the plaintiff under the policy. The plaintiff's right to file a claim against the defendant was revived, however, some two years later, upon the passage of P.A. 93-77. Because the challenged legislation restores to the plaintiff the right to seek up to $80,000 in underinsured motorist benefits; see footnote 5; its effect on the legal relations of the parties cannot be characterized as merely incidental or insignificant. We proceed, therefore, on the premise that § 3 operated as a sufficient impairment of the parties' contractual relationship to warrant consideration of the remaining two factors, namely, the regulatory history of the insurance industry and the reasonable expectations of the parties. *Schieffelin & Co.* v. *Dept. of Liquor Control*, supra, 194 Conn. 180.

As the defendant concedes, the insurance business is heavily regulated. In fact, the insurance industry "is

---

[14] We assume without deciding that the trial court properly determined that the plaintiff's action was not timely under the policy and that she had not satisfied her burden of demonstrating that the late filing did not materially prejudice the defendant. See footnote 10.

impacted by over 1000 statutes in this state, and has been subjected to extensive legislation dating [from] as early as 1833." *Aetna Life & Casualty Co.* v. *Braccidiferro*, 34 Conn. App. 833, 847, 643 A.2d 1305 (1994), cert. granted, 232 Conn. 901, 651 A.2d 743 (1995). The automobile liability insurance business, in particular, is strictly regulated. *Wilson* v. *Security Ins. Co.*, 213 Conn. 532, 539, 569 A.2d 40, cert. denied, 498 U.S. 814, 111 S. Ct. 52, 112 L. Ed. 2d 28 (1990), cert. denied, 502 U.S. 1005, 112 S. Ct. 640, 116 L. Ed. 2d 658 (1991); *Simonette* v. *Great American Ins. Co.*, 165 Conn. 466, 473, 338 A.2d 453 (1973). For example, since 1967, all automobile liability policies issued in this state have been statutorily required to contain uninsured and underinsured motorist coverage, and the laws governing such mandatory insurance coverage have been subjected to regular legislative review and revision.[15] Indeed, several amendments to those statutes have been passed in direct response to decisions of this court. See, e.g., *Lowrey* v. *Valley Forge Ins. Co.*, 224 Conn. 152, 160, 617 A.2d 454 (1992); *Nationwide Ins. Co.* v. *Gode*, 187 Conn. 386, 390–91, 446 A.2d 1059 (1982), overruled in part on other grounds, *Covenant Ins. Co.* v. *Coon*, 220 Conn. 30, 36 n.6, 594 A.2d 977 (1991);

---

[15] Since first mandating uninsured motorist coverage for all automobile liability insurance policies in 1967; see Public Acts 1967, No. 510; the legislature has made numerous substantive changes to the laws regulating uninsured and underinsured motorist insurance. See, e.g., No. 202 of the 1969 Public Acts (limiting maximum uninsured motorist coverage to amount not greater than coverage for bodily injury); No. 767 of the 1971 Public Acts (requiring arbitration of coverage issues under certain policies); No. 79-235 of the 1979 Public Acts (mandating underinsured motorist coverage for all policies); Nos. 83-461 and 83-465 of the 1983 Public Acts (authorizing purchase of reduced amount of uninsured motorist coverage); and No. 85-12 of the 1985 Public Acts (expanding class of vehicles subject to mandatory liability insurance coverage). See also J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (1993) § 1.1, pp. 1–9 (historical overview of legislation concerning uninsured and underinsured motorist coverage).

*Oliva* v. *Aetna Casualty & Surety Co.*, 181 Conn. 37, 41, 434 A.2d 304 (1980). Furthermore, in 1979, the legislature expressly prohibited insurers from limiting the time period for the filing of uninsured and underinsured motorist claims to less than one year;[16] Public Acts 1979, No. 79-235; and, since that date, the minimum limitation period has been extended twice, first from one to two years; Public Acts 1982, No. 82-406; and, more recently, from two years to three years. P.A. 93-77.

In light of the state's pervasive and longstanding regulation of the insurance industry, the action taken by the legislature to remediate the consequences of our decisions in *McGlinchey* v. *Aetna Casualty & Surety Co.*, 224 Conn. 133, 617 A.2d 445 (1992), and *Hotkowski* v. *Aetna Life & Casualty Co.*, 224 Conn. 145, 617 A.2d 451 (1992), was by no means unforeseeable. Indeed, the defendant was cognizant of the fact that, until the publication of *McGlinchey* and *Hotkowski*, the enforceability of a two year limitation period for underinsured motorist claims, and the date on which any such period began to run, had been in doubt. See footnote 7. In fact, at least two Superior Court decisions issued prior to *McGlinchey* and *Hotkowski*, including one in which the defendant was a party, had struck down, as contrary to public policy, the provisions of an automobile liability policy requiring that a claim for underinsured motorist benefits be commenced within two years from the date of the accident.[17] Finally, the defendant was well

---

[16] Prior to 1979, the legislature had prescribed no minimum limitation period for the filing of uninsured and underinsured motorist claims.

[17] See *Kissh* v. *Auto Ins. Co. of Hartford*, Superior Court, judicial district of Litchfield, Docket No. 054232 (January 28, 1992) (*Pickett, J.*), and *Kulisch* v. *Aetna Casualty & Surety Co.*, Superior Court, judicial district of New Haven, Docket No. 90-0298498-S (December 20, 1991) (*Reilly, J.*). The *Kissh* and *Kulisch* courts each held that the two year limitation period authorized by General Statutes (Rev. to 1991) § 38a-290 applied only to claims for uninsured motorist benefits and not to underinsured motorist

aware both that exhaustion of the liability limits of the tortfeasor's policy is a necessary precondition to the recovery of underinsured motorist benefits; General Statutes (Rev. to 1989) § 38-175c (b) (1), now revised and recodified as § 38a-336; *Continental Ins. Co.* v. *Cebe-Habersky*, 214 Conn. 209, 212–13, 571 A.2d 104 (1990); and that the exhaustion of the tortfeasor's policy limits can take a considerable amount of time.[18] *Aetna Life & Casualty Co.* v. *Braccidiferro*, supra, 34 Conn. App. 848.

claims. These decisions were based in part on *Continental Ins. Co.* v. *Cebe-Habersky*, 214 Conn. 209, 212–13, 571 A.2d 104 (1990), wherein we concluded that, under General Statutes (Rev. to 1989) § 38-175c (b) (1), now revised and recodified as § 38a-336, an insured may not recover underinsured motorist benefits until exhausting the payments for which the tortfeasor is liable. See also *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 195–96, 530 A.2d 171 (1987) ("underinsured motorist coverage is triggered when the tortfeasor's automobile liability coverage is exhausted"). The *Kissh* and *Kulisch* courts reasoned that a two year limitation period for the filing of underinsured motorist claims could not have been contemplated by the legislature because some insureds would be unable to ascertain and exhaust the liability limits of the tortfeasor's policy within two years of the date of the accident. Not long after *Kissh* and *Kulisch* were decided in the Superior Court, however, we concluded, in *McGlinchey* and *Hotkowski*, that § 38a-290 also applied to underinsured motorist claims, and that an insurer was entitled to enforce an unambiguous policy provision requiring the filing of an underinsured motorist claim within two years of the accident. In so holding, we also noted that an insured was not prohibited from filing a claim for underinsured motorist benefits prior to exhausting the payments for which the tortfeasor was liable. See *McGlinchey* v. *Aetna Casualty & Surety Co.*, supra, 224 Conn. 141 n.7; *Hotkowski* v. *Aetna Life & Casualty Co.*, supra, 224 Conn. 150 n.6. As we have indicated, § 3 of P.A. 93-77 was enacted in recognition of the fact that some insureds had failed, prior to the rendering of our decisions in *McGlinchey* and *Hotkowski*, to file an underinsured motorist claim within the contractual two year limitation period, either in reliance on the reasoning of *Kissh* and *Kulisch*, or in the good faith, though erroneous, belief that they were statutorily required, after our holding in *Cebe-Habersky*, to exhaust the tortfeasor's policy limits before filing a claim for underinsured motorist benefits. See footnote 7.

[18] Because the defendant was also the tortfeasor's insurance carrier, the defendant cannot claim to have been surprised by the length of time required by the plaintiff to ascertain and exhaust the liability limits of the tortfeasor's policy.

Upon consideration of the relevant factors, we are not persuaded that § 3 of P.A. 93-77 operates as a substantial impairment of the defendant's contractual rights under article one, § 10, of the federal constitution. In view of the highly regulated nature of the insurance industry and the foreseeability of the legislature's remedial action,[19] the defendant, in order to establish a contractual interference of constitutional magnitude, was required to demonstrate that the challenged legislation gave rise to an impairment of overriding severity. Because the contract modification effected by § 3 of P.A. 93-77 was neither extreme nor extraordinary, the defendant has failed to meet this burden.

Furthermore, even if a contrary conclusion were required, we are satisfied that, because § 3 of P.A. 93-77 properly serves a significant and legitimate public purpose, its enactment was justified as a valid exercise of the state's police powers. As we have noted, § 3 of P.A. 93-77 was passed in response to our decisions in *McGlinchey* v. *Aetna Casualty & Surety Co.*, supra, 224 Conn. 133, and *Hotkowski* v. *Aetna Life & Casualty Co.*, supra, 224 Conn. 145, wherein we upheld policy provisions requiring the filing of a claim for underinsured motorist benefits within two years from the date of the accident.[20] Prior to those decisions, there

[19] Thus, unlike the Minnesota statute held to be constitutionally defective in *Allied Structural Steel Co.* v. *Spannaus*, supra, 438 U.S. 249-50, § 3 of P.A. 93-77 neither "impos[es] a sudden, totally unanticipated . . . obligation upon the [defendant]," nor "invade[s] an area never before subject to regulation by the [s]tate."

[20] It is clear from the legislative history of P.A. 93-77 that other sections of the act were also passed in response to our decisions in *McGlinchey* and *Hotkowski*. In particular, the legislature, by prospectively extending the minimum limitation period for the filing of underinsured motorist claims from two to three years from the date of the accident, and by providing for the tolling of the limitation period by the insured in certain specified circumstances; see § 2 (e) of P.A. 93-77; sought to avoid unnecessary litigation stemming from the filing of underinsured motorist claims prior to the exhaustion of the payments for which the tortfeasor is responsible. See

was considerable disagreement as to whether an insured could properly file an underinsured motorist claim before ascertaining and exhausting the liability limits of the tortfeasor's policy.[21] Consequently, certain insureds, unable to exhaust the liability limits of the tortfeasor's policy within the contractual two year period, had delayed filing an underinsured motorist claim until after that period had expired.[22] Although

36 H.R. Proc., Pt. 8, 1993 Sess., pp. 2751–52, remarks of Representative Cameron C. Staples; id., p. 2759, remarks of Representative Dale W. Radcliffe; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1993 Sess., pp. 525, 545–46, remarks of William F. Gallagher; see also *McGlinchey* v. *Aetna Casualty & Surety Co.*, supra, 224 Conn. 141–42 (*Berdon, J.,* dissenting).

[21] Compare *McGlinchey* v. *Aetna Casualty & Surety Co.*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 700508 (September 13, 1991) (*O'Neill, J.*) (two year limitation period enforceable), aff'd, 224 Conn. 133, 617 A.2d 445 (1992), and *Hotkowski* v. *Aetna Life & Casualty Co.*, Superior Court, judicial district of Middletown, Docket No. 59435 (September 11, 1991) (*Higgins, J.*) (same), aff'd, 224 Conn. 145, 617 A.2d 451 (1992), with *Kissh* v. *Auto Ins. Co. of Hartford*, Superior Court, judicial district of Litchfield, Docket No. 054232 (January 28, 1992) (*Pickett, J.*) (two year limitation period not enforceable), and *Kulisch* v. *Aetna Casualty & Surety Co.*, Superior Court, judicial district of New Haven, Docket No. 90-0298498-S (December 20, 1991) (*Reilly, J.*) (same); see also footnotes 7 and 17.

[22] For example, Representative Dale W. Radcliffe, in explaining the purpose of the legislation during the floor debate in the House of Representatives, stated that, prior to the *McGlinchey* and *Hotkowski* decisions, "everyone had thought that one had to exhaust, under the statute, all policies applicable at the time of the accident . . . before bringing a [claim for uninsured and underinsured motorist benefits]." 36 H.R. Proc., Pt. 8, 1993 Sess., p. 2757. Representative Radcliffe further explained that "there was a conflict between the [statutory exhaustion requirement] and the contract provision. The [exhaustion requirement provided] that an underinsured motorist case could be brought after the limits of all policies applicable at the time of the accident have been exhausted by the payments of judgments or settlement. The contract provision in question, on the the other hand, said you had to bring a case on the contract [within] two years. . . ." Id., p. 2758. Similarly, in testimony in favor of the proposed bill before the judiciary committee, William F. Gallagher, an attorney and former president of the Connecticut Trial Lawyer's Association, stated that, prior to *McGlinchey* and *Hotkowski*, it was widely believed, after our decisions in *Continental Ins. Co.* v. *Cebe-Habersky*, supra, 214 Conn. 209, and *Ameri-*

we made it clear in *McGlinchey* and *Hotkowski* that an insured may properly commence an action for underinsured motorist benefits prior to exhausting the liability limits of the tortfeasor's policy,[23] those insureds who, prior to *McGlinchey* and *Hotkowski*, had failed to do so in good faith reliance on an intricate and sometimes confusing[24] regulatory scheme were thereafter left without recourse under the policy. Consistent with the broad remedial aim of our laws "to protect and make whole a person injured at the hands of an uninsured/underinsured motorist"; *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 197, 530 A.2d 171 (1987); § 3 of P.A. 93-77 was intended to restore to that group of insureds the right to recover the underinsured motorist benefits to which they otherwise would have been entitled had they not failed to file a claim within the two year contractual period.[25]

In determining whether the challenged legislative action seeks to achieve a legitimate state objective, "courts properly defer to legislative judgment as to the

---

*can Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 195–96, 530 A.2d 171 (1987), that a contractual two year limitation period for the filing of an underinsured motorist claim was unenforceable because it was not expressly authorized by General Statutes (Rev. to 1987) § 38-27, now revised and recodified as § 38a-290, but that, even if enforceable, any such limitation period did not begin to run until the liability limits of the tortfeasor's policy had been exhausted. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1993 Sess., pp. 525, 541–47.

[23] See *McGlinchey* v. *Aetna Casualty & Surety Co.*, supra, 224 Conn. 141 n.7; *Hotkowski* v. *Aetna Life & Casualty Co.*, supra, 224 Conn. 150 n.6.

[24] See J. Berk & M. Jainchill, Connecticut Law of Uninsured and Underinsured Motorist Coverage (1993), Introduction, p. v ("[c]onfusion in [the] area [of uninsured and underinsured motorist coverage] will continue as significant modification of existing law occurs").

[25] Indeed, in *Hotkowski* v. *Aetna Life & Casualty Co.*, supra, 224 Conn. 151–52, we expressly noted, in rejecting an insured's public policy challenge to the enforceability of a contractual two year limitation period under General Statutes (Rev. to 1987) § 38-27, that the legislature, not the courts, was the proper forum for the resolution of that policy issue.

necessity and reasonableness of [the] measure."[26] *United States Trust Co.* v. *New Jersey*, supra, 431 U.S. 22–23; see also *Keystone Bituminous Coal Assn.* v. *DeBenedictis*, supra, 480 U.S. 505. Bearing that standard in mind, we are satisfied that § 3 of P.A. 93-77 was a reasonable response to our holdings in *McGlinchey* and *Hotkowski*, which, though mandated by clear statutory and contract language, carried consequences of a severity apparently not foreseen by the legislature. Furthermore, because § 3 is rationally designed to remedy those consequences, the "aim of the [challenged legislative action] is properly targeted." *Schieffelin & Co.* v. *Dept. of Liquor Control*, supra, 194 Conn. 184; see also *Energy Reserves Group, Inc.* v. *Kansas Power & Light Co.*, supra, 459 U.S. 412; *Allied Structural Steel Co.* v. *Spannaus*, supra, 438 U.S. 250. We conclude, therefore, that because § 3 is an appropriate legislative response to an important issue of legitimate public concern, the contractual interference resulting therefrom has been justified by the state as a reasonable exercise of its police powers.[27] Accordingly, the defendant has failed to meet its heavy burden of establishing that § 3 of P.A. 93-77 violates the contract clause of the United States constitution.

---

[26] A stricter standard of review, not applicable here, is required when the state is itself a party to the contract impaired by the challenged state action. See *Energy Reserves Group, Inc.* v. *Kansas Power & Light Co.*, supra, 459 U.S. 412–13 n.14; *United States Trust Co.* v. *New Jersey*, supra, 431 U.S. 23, 26.

[27] The United States Supreme Court has indicated that the elimination of unforeseen windfall profits may also constitute a sufficient justification for regulatory action that impairs an existing contractual relationship. See *Energy Reserves Group, Inc.* v. *Kansas Power & Light Co.*, supra, 459 U.S. 412; *United States Trust Co.* v. *New Jersey*, supra, 431 U.S. 31 n.30. In light of the statutory exhaustion requirements, the legislature reasonably could have concluded, therefore, that insurers who, like the defendant, had issued policies requiring the filing of a claim for uninsured or underinsured motorist benefits within two years from the date of the accident, stood to profit unexpectedly, and at the unfair expense of their insureds, by virtue of the contractual two year limitation period.

## II

The defendant claims, as an alternate ground for affirmance, that § 3 of P.A. 93-77 violates its substantive due process rights guaranteed under the fourteenth amendment to the United States constitution.[28] We disagree.

The defendant argues that § 3 of P.A. 93-77 unreasonably interferes with the parties' transaction because it retrospectively divests the defendant of a right that had been finally determined under the terms of the policy. Although "the mere fact that a statute is retrospective does not itself render it invalid"; *Schieffelin & Co.* v. *Dept. of Liquor Control*, supra, 194 Conn. 174; "[r]etroactive legislation presents problems of unfairness that are more serious than those posed by prospective legislation, because it can deprive citizens of legitimate expectations and upset settled transactions. For this reason, [t]he retroactive aspects of [economic] legislation, as well as the prospective aspects, must meet the test of due process: a legitimate legislative purpose furthered by rational means."[29] (Internal quotation marks omitted.) *General Motors Corp.* v. *Romein*, supra, 503 U.S. 191.

In holding that § 3 of P.A. 93-77 passes muster under article one, § 10, of the federal constitution, we explained why the challenged legislation properly

[28] The fourteenth amendment to the United States constitution provides in pertinent part: "No State . . . shall deprive any person of life, liberty, or property, without due process of law . . . ."

[29] The defendant "[does] not belong to a constitutionally recognized suspect class and [it has] not alleged the impairment of a fundamental constitutional right. [The defendant's] claim must be tested therefore, in accordance with the rules that normally govern constitutional challenges of economic or social welfare legislation, by ascertaining whether the legislature has acted arbitrarily or irrationally." *Connecticut Education Assn., Inc.* v. *Tirozzi*, supra, 210 Conn. 299; see also *Fair Cadillac-Oldsmobile Isuzu Partnership* v. *Bailey*, 229 Conn. 312, 318–19, 640 A.2d 101 (1994).

serves a significant and legitimate public purpose. See part I of this opinion. For those reasons, which need not be repeated here, we are compelled to conclude that § 3 is neither arbitrary nor irrational and, accordingly, that it fully satisfies the requirements of due process.[30] The defendant's claim of a due process violation, therefore, is without merit.

## III

The defendant also claims, as a second alternate basis for affirmance, that § 3 of P.A. 93-77 violates article first, § 1, of the Connecticut constitution,[31] which proscribes legislation intended solely for individual benefit. We do not agree.

We have construed the state constitutional prohibition against exclusive public emoluments or privileges "to apply to legislation preferring certain individuals over others when wholly unrelated to the public interest. No enactment creating a preference can withstand constitutional attack if the sole objective of the [legislature] is to grant personal gain or advantage to an individual. Its validity is contingent, at least in part, upon its furthering a public purpose; if enacted with that end in view, legislation can be sustained even though it may incidentally confer a direct benefit upon an individual

---

[30] The plaintiff also relies on the determination of the Appellate Court in *Aetna Life & Casualty Co.* v. *Braccidiferro*, supra, 34 Conn. App. 851, that § 3 of P.A. 93-77 "is procedural and remedial, not directed to subtantive rights, and can be applied retroactively without divesting [the defendant] of a substantive right without due process of law." We are not persuaded, however, that a statute may properly be characterized as affecting procedural, rather than substantive, rights in circumstances where, as here, the legislation alters the material terms of a preexisting contractual relationship, thereby affecting rights and obligations that had previously become fixed. See *Bayusik* v. *Nationwide Mutual Ins. Co.*, 233 Conn. 474, 483–84, 659 A.2d 1188 (1995).

[31] Article first, § 1, of the state constitution provides: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."

or a class. . . . Only if an act serves some public purpose can it be constitutionally sufficient. . . ." (Citations omitted; internal quotation marks omitted.) *Merly v. State*, 211 Conn. 199, 212–13, 558 A.2d 977 (1989); see also *Chotkowski v. State*, 213 Conn. 13, 17–18, 566 A.2d 419 (1989); *Tough v. Ives*, 162 Conn. 274, 292, 294 A.2d 67 (1972); *State ex rel. Higgins v. Civil Service Commission*, 139 Conn. 102, 106, 90 A.2d 862 (1952).

We have also previously explained why § 3 of P.A. 93-77, as curative legislation fashioned to mitigate the consequences of our decisions in *McGlinchey v. Aetna Casualty & Surety Co.*, supra, 224 Conn. 133, and *Hotkowski v. Aetna Life & Casualty Co.*, supra, 224 Conn. 145, serves a legitimate and important public purpose. See part I of this opinion. Because the challenged enactment addresses an issue of public rather than solely private concern, the fact that it incidentally confers a benefit on the plaintiff does not render it constitutionally infirm. *Merly v. State*, supra, 211 Conn. 213; *State ex rel. Higgins v. Civil Service Commission*, supra, 139 Conn. 106. The defendant, therefore, has failed to establish that § 3 contravenes article first, § 1, of the Connecticut constitution.

## IV

We conclude that § 3 of P.A. 93-77 does not violate either the contract or due process clauses of the United States constitution, or article first, § 1, of the Connecticut constitution. Accordingly, the trial court improperly granted the defendant's motion for summary judgment on the ground that the plaintiff's action was time barred under the two year limitation period of the policy.

The judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other justices concurred.