[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S APPLICATION TO COMPELARBITRATION
This case presents rather unusual circumstances resulting in a personal injury plaintiff demanding arbitration under her own uninsured/under-insured motorist coverage more than eight years after an injury-producing motor vehicle accident. As the events unfolded, plaintiff's counsel became aware of the absence of coverage after being unable to recover the $202,000 award handed down by a jury after a full trial. As a result, plaintiff's counsel issued a demand to arbitrate under plaintiff's UIM policy. Respondent UIM carrier, Nationwide, denied the demand and has invoked the statute of limitations for written contracts, Connecticut General Statutes § 52-576.[1]
Respondent carrier has contended that this six year limitation ousts plaintiff's claim because the statute began to run on the date of the accident. Plaintiff urges that the statute CT Page 1817 did not commence tolling against her until the jury's verdict. The court has concluded that neither is the appropriate landmark given this particular scenario.
A recitation of the undisputed facts is necessary to an understanding of the court's determination, infra.
The chronology of events is as follows:
April 16, 1988 motor vehicle accident;
 April 25, 1988 plaintiff applied to Nationwide for medical benefits;
 March 12, 1989 suit was brought against tortfeasor, Marc Mead, and the lessor of his rented car, Sharp Leasing Corporation;
 May 10, 1989 Progressive Insurance wrote a letter to plaintiff's counsel on behalf of defendant, Sharp Leasing, (text, infra);
 May 25, 1989 law offices of Alan Barry appeared for defendant, Sharp Leasing;
 June 17, 1994 plaintiff propounded interrogatories;
 July 15, 1994 defendant, Sharp Leasing, answered said interrogatories, indicating lack of insurance coverage, and answers were mailed to plaintiff;
 July 17, 1994 defendant filed its Notice of Compliance with plaintiff's interrogatories and certifies it mailed answers to plaintiff on July 15, 1994;
 May ?, 1996 default was entered against defendant, Marc Mead, who never CT Page 1818 appeared in the case;
 May 10, 1996 plaintiff's trial verdict rendered against Sharp Leasing for $202,000;
 June 5, 1996 trial court denied defendant's motion to set aside the verdict;
 June 19, 1996 defense counsel authored letter to plaintiff's counsel, stating that Sharp was not insured and that to the best of Sharp Leasing's knowledge the lessee also did not have insurance. Defense counsel hoped "this makes the insurance situation clear";
 July 17, 1996 plaintiff's counsel demands payment of the coverage to satisfy the trial judgment;[2]
 October 7, 1996 plaintiff filed application in Superior Court to compel arbitration.
The first significant fact requiring elaboration is the May 10, 1989 letter to plaintiff's counsel from Progressive Insurance, written approximately two months after suit was filed[3] against tortfeasors Mead and Sharp Leasing. This court believes that this letter would most fairly be characterized as justifying plaintiff's counsel in feeling that no coverage problem was present, or yet present; it certainly ought not be deemed to be a revelation of an absence of coverage. Its contents:
 [W]e are an excess liability insurance carrier for Sharp Leasing Corporation. Under the terms of our policy, we provide coverage to Sharp Leasing when, because of their status as owner of a leased vehicle, they become financially responsible for damages suffered by a third party. In addition, CT Page 1819 under certain circumstances, the policy provides the lessee with the statutory minimum financial responsibility limits of the state in which the loss occurred.
 Our policy only becomes effective when there is no other insurance available on the leased vehicle. We are currently investigating the applicability of our coverage to this matter.
 You will be notified as soon as a final determination is made.[4] In the meantime, you have kindly granted the undersigned a 30-day extension dating from May 9, 1989, in which to respond to the lawsuit in this matter.
Respondent UIM carrier Nationwide acknowledges that it was unaware plaintiff's counsel had received this "information" from Progressive at the time it declined to arbitrate. While said Progressive letter does not alter Nationwide's declination, it is noted that Nationwide does not contend plaintiff's counsel was negligent in taking Progressive's letter as something other than notice of an insurance problem.[5]
Halfway through the thirty day extension Progressive Insurance sought, defense counsel appeared for Sharp and stayed in the matter through trial. Plaintiff's counsel might be forgiven for thinking Progressive sent him. The other event significant in the court's determination occurred in discovery. As noted in the chronology, the plaintiff propounded interrogatories which were answered in due course by Sharp Leasing. Two questions posed therein:
 7. If at the time of the incident alleged in the complaint, you were covered by an insurance policy under which an insurer may be liable to satisfy part or all of a judgment or reimburse you for payments to satisfy part or all of a judgment, state the following:
(a) Name(s) and address(es) of the insured.
 8. If at the time of the incident . . ., you were protected against the type of risk which is CT Page 1820 the subject of this lawsuit by excess umbrella insurance, or other insurance, state:
 (a) The name(s) and address(es) of the named insured.
To each of these inquiries, defendant answered "none."
It was at this time that the court concludes the statute began to run against plaintiff for reasons which will be set forth, infra. Thus, the court rejects respondent carrier's suggestion that the accident date commences the running of the statute, this being well before any plaintiff should be held to discover or suspect a coverage problem. Similarly, the court rejects plaintiff's assertion that the verdict date starts the six year period, a claim weakened by the discovery exchange.
Respondent Nationwide presses § 52-576 as controlling, in purported obeisance to Bayusik v. Nationwide Mutual Ins. Co.,233 Conn. 474 (1995), and Serrano v. Aetna Ins. Co., 233 Conn. 437
(1995).[6]
The concededly applicable contract limitation statute, Connecticut General Statutes § 52-276, refers to a period of six years "after the right of action accrues. . . ." (Emphasis added.) The time of accrual of this sort of action is illuminated by Wynn v. Metropolitan Property Casualty Ins. Co.,30 Conn. App. 803 (1993), affirmed, 228 Conn. 436 (1994).
In Wynn, plaintiff, injured in a July, 1981 motor vehicle accident, exhausted the limits of tortfeasor's policy in early January, 1985; but, demand for arbitration against plaintiff's UIM carrier was made six years and three weeks post exhaustion. The Appellate Court rejected plaintiff's assertion that her cause of action accrued when the UIM carrier rejected her demand to arbitrate, and held: "The cause of action accrued, at the latest, when she had exhausted the tortfeasor's policy . . . ." Id., 808.Wynn articulated this holding after this exposition of our law:
 While the statute of limitations normally begins to run immediately upon the accrual of the cause of action, some difficulty may arise in determining when the cause or right of action is considered as having accrued. The true test is to
CT Page 1821 establish the time when the plaintiff first could have successfully maintained an action. [Emphasis added.] Id. at 807-08, citing Gaylord Hospital v. Massaro, 5 Conn. App. 465, 467 (1985).
 Wynn and Gaylord each, like the case at bar, dealt with assertions of six year limitations pursuant to C.G.S. § 52-276. Wynn rejected Nedra Wynn's assertion that the statute began to run only from the purported breach, i.e., the refusal to arbitrate. This court likewise rejects the virtually identical claim of Roxanne Polizos, that the statute began to tick off her time only upon the $202,000 verdict.[7]
 Wynn articulated a sound rationale against holding off the running of the statute until refusal to arbitrate. "The result . . . would be a virtual nullification of the statute of limitations because there would be no limit as to when a plaintiff could request arbitration. The claim would be completely open-ended and the function of the statute of limitations to prevent stale claims would be defeated." Wynn,supra, 30 Conn. App. at 808. (Emphasis added.)
When, then, is the time when plaintiff could first have "successfully maintained an action," in the words of Wynn? Although Nationwide, as noted, does not argue negligence by plaintiff, this court has concluded that the particular facts unique to this case put forth an equitably obvious moment when plaintiff must be held to have been alerted that action ought to be taken to request arbitration or issue notice of the likely need therefor. That point in time occurred when plaintiff received the interrogatory answer indicating a complete absence of coverage; it was then that a UIM action could "successfully be maintained." Said date was July 15, 16 or 17, 1994 (see chronology, infra) and the July 17, 1996 demand for arbitration was well within six years from said interrogatory answer.
Nationwide would have this court distinguish away Wynn merely because it dealt with an underinsured situation and this matter is an uninsured one. That is only so in very belated hindsight. Early on, there was no decently clear indication that there existed a lack of, or, a likely shortfall in coverage. Instead, until the 1994 interrogatory was answered, the insurance picture was neither fish nor fowl in the uninsured versus underinsured context. Further, this "date of accident" trigger point and fine distinctions between the uninsured and underinsured is from a CT Page 1822 statutory scheme defendant puts forth as not governing.[8]
One might also note that respondent's position would require plaintiff to have demanded arbitration before awareness of the coverage problem. While our law does not entirely prohibit the unfortunate happenstance whereby a cause expires before its existence is realized by a victim, there is no need to decide whether that must result here where respondent relies upon a limitation employing an "accrual" trigger point.
It is also unpalatable to contemplate the that respondent's position, if accepted, would result in our courts having to accept and partially entertain applications to compel arbitration before exhaustion, and before reasonable awareness of coverage difficulty, merely as a prophylaxis against the six year clock, when no problem, after all, may be shown to exist. Additionally, disparities in our judicial districts might permit exhaustion clarification to some, those who have fully litigated against the tortfeasor within six years of the accident, while others, in other districts, stand in a longer line awaiting trial. A functional rather than mechanical approach seems superior. Plaintiff's application to compel arbitration is granted.
Nadeau, J.